IN the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
Robert W. NORLIN, attorney at law.

Supreme Court

*No. 80–1668–D. Filed October 13, 1981.*
(Also reported in 310 N.W.2d 789.)

PER CURIAM. *Attorney disciplinary proceeding; attorney's license suspended.*

This is an appeal from the order of a referee that the license of the respondent-appellant, Attorney Robert W. Norlin, to practice law in Wisconsin be suspended

for 60 days for professional misconduct. The referee found that the appellant failed to promptly and judiciously pursue a divorce matter and failed to communicate with his client and to respond to written inquiries of the Board of Attorneys Professional Responsibility (Board), that he failed to promptly and judiciously pursue a title correction matter and failed to communicate with his client and to respond to a fellow attorney's letters and inquiries concerning the matter and to respond to the written inquiries of the Board, that he failed to promptly and judiciously pursue his client's claims resulting from an automobile accident and failed to communicate with his client and to respond to the written inquiry of the Board, that he failed to respond to the written inquiries of the Board concerning an allegation that he had neglected a legal matter in an estate and that he failed to promptly and judiciously conclude matters in an estate and failed to communicate with his client and to respond to inquiries made on his client's behalf by a fellow attorney. The referee also ordered that the appellant pay the sum of $2,500 to the Board to be applied toward the costs and fees incurred in the disciplinary proceeding.

The subject of this appeal, although in the form of an order, is the referee's report filed with the court on February 12, 1981, pursuant to SCR 21.09(5) (1980) containing the referee's findings, conclusions and recommendation for the imposition of discipline.[1] Pursuant to SCR 21.09(6), the appeal from the referee's report is conducted under the rules governing civil appeals in this court.

On September 2, 1980, the Board filed a complaint with this court alleging that the appellant was guilty of

[1] SCR 22.17(1) provides: "A party may appeal only from the report of the referee. In an appeal from the report, the supreme court may review all prior actions and rulings of the referee."

professional misconduct by reason of his gross neglect of five legal matters entrusted to him, his failure to respond to numerous inquiries of his clients and attorneys representing them and his failure to respond to inquiries from the Board and from the district grievance committee in their investigations of four of the matters. The appellant filed an answer denying that he was guilty of neglect in any of the five matters and, while admitting certain failures to respond to district grievance committee and Board inquiries, stating that he filed a written report to the district grievance committee and made two appearances before it. We referred the matter for hearing to the clerk of circuit court for Bayfield county and appointed Rodney L. Young of Wausau as referee, pursuant to SCR 21.09(4). The hearing was held on December 5 and 6, 1980.

The material facts are not disputed. In October, 1975 the appellant, an attorney duly licensed to practice law in Wisconsin since February of 1964 and who resides and maintains his law practice in Washburn, Wisconsin, was visited at his office by Mr. and Mrs. Benson, who wished to commence what was to be an uncontested divorce action. The appellant agreed to start divorce proceedings, but he never filed a complaint for divorce or initiated any other proceeding in the matter. The divorce action was subsequently commenced on December 3, 1976 by another attorney retained by one of the Bensons.

The appellant admitted that at the time he undertook the Benson matter he did not normally handle divorce actions and that he accepted this one with the intention that an associate attorney in his office would provide the necessary legal work. He testified that between the time of his initial conference with the Bensons and the fall of 1976, at which time he received a copy of Mr. Benson's letter of complaint to the State Bar, he personally did no work on the matter and did not ascertain

whether the associate attorney had followed his instructions to see to the divorce action. There was testimony that at the beginning of April, 1976 the appellant left the law firm with which he had been associated and commenced practice on his own.

The appellant admitted to having received two letters from the State Bar concerning the Benson complaint and that he did not respond as requested. He offered no explanation for this failure other than the press of business. The appellant also failed to furnish a written response requested on at least 10 occasions by the investigating member of the district professional responsibility committee.

From these facts the referee concluded that the appellant's failure to promptly and judiciously pursue the Benson divorce matter, together with his failure to communicate with his client, constituted misconduct in the form of neglect of a legal matter entrusted to him, in violation of SCR 20.32(3). The referee further concluded that the appellant's failure to respond to the written inquiries of the Board constituted misconduct, in violation of SCR 21.03(4) and 22.07(2).

The appellant argues that the dissolution of the partnership in which he had been practicing, setting up his own office, keeping up with pending matters and his having left the Benson file with his former associate combined to exert a great deal of pressure on him and that this should be taken into consideration in determining the seriousness of his failure to act in the Benson matter. Because there was no mention of these circumstances in the referee's report, the appellant argues that the referee did not consider them.

The decision whether those circumstances are such as to lessen the gravity of the appellant's misconduct is within the discretion of the referee, who considers the evidence and reaches a conclusion on the ultimate issue:

whether the appellant is guilty of misconduct. However, because it is an issue of law rather than one of fact, we are not bound by the referee's determination. First National Leasing Corp. v. Madison, 81 Wis. 2d 205, 208, 260 N.W.2d 251, 253 (1977). There was considerable testimony concerning the dissolution of the firm and the strained relations that resulted between the appellant and his former partner, but we find no evidence in the record that the appellant's workload and the pressure involved in his departure from one office and the opening of another were so great as to ameliorate his misconduct.

In the hearing before the referee a question arose as to who was the client in this transaction: the complaint alleged that both Mr. and Mrs. Benson retained the appellant to represent them; the appellant denies that he was retained by Mr. Benson and asserts that his client was Mrs. Benson. This question was raised because the disciplinary investigation had been initiated by a complaint made by Mr. Benson, and it is the appellant's contention that Mr. Benson had no standing to complain of the appellant's professional conduct. The referee found that the appellant was retained by both Mr. and Mrs. Benson, but he properly determined that the identity of the person bringing a complaint about a lawyer's professional conduct is not material to the issue of whether such conduct constitutes professional misconduct. Once the matter has been brought to the attention of the disciplinary agency, the only issue concerns the lawyer's conduct itself. SCR 21.09(1).[2]

The second allegation of professional misconduct involved the appellant's drafting of a deed for the sale of

[2] SCR 21.09(1) provides, in pertinent part, "The administrator shall investigate any possible misconduct . . . of an attorney without regard to the manner in which the matter is brought to his or her attention. . . ."

a parcel of land which was part of a nine-acre parcel owned by Emily Davis. In drafting the deed in June of 1974, the appellant mistakenly described the entire parcel, rather than merely the three acres which Mrs. Davis intended to convey. At the same time, the appellant, who was serving as escrow agent for closing Farmers Home Administration loans, prepared a real estate mortgage from the buyer to the FHA which contained the same error in description. The appellant attributed this error to his having used the property description contained in the deed by which Mrs. Davis had acquired title to the premises, rather than the description contained in the option which she had previously given to the buyer.

The error in the deed's description was not discovered until June of 1975 when Mrs. Davis retained another attorney to sell the remaining six acres of the original parcel to an interested buyer. At Mrs. Davis's request, the appellant agreed to correct the error in the deed and the mortgage. A correcting deed was not recorded until November of 1976, some 18 months after discovery of the error.

As to the mortgage, the FHA had acknowledged the error in the property description in a letter of August 29, 1975. It also acknowledged that it had the procedural authority to release the property erroneously mortgaged, but it refused to do so on the ground that its mortgagor was delinquent on the underlying loan and had not made improvements on the land as agreed. A partial release of the FHA mortgage, obtained by someone other than the appellant, was executed and recorded on May 29, 1980.

As a result of the almost six-year delay in correcting the deed and mortgage, Mrs. Davis lost the sale of her property in 1975 and was required to refund the earnest money to the buyer. In addition, Mrs. Davis suffered

additional financial loss for the reason that she had made bank loans in reliance on the sale, the proceeds of which were to be applied directly to the repayment of the loans. On several occasions the attorney hired by Mrs. Davis to sell the six-acre parcel contacted the appellant requesting him to clear title to the property, but the appellant did not respond to his letters. The appellant testified that at times he refused to talk with Mrs. Davis on the telephone or return her calls when she sought information concerning his efforts to correct the error.

Between the discovery of the error and the recording of the partial release, the appellant made several requests to the local FHA supervisor to furnish a release, but he failed to understand how the error could properly be corrected of record other than by the FHA's voluntarily furnishing a release. He had obtained a circuit court order correcting the error in the deed, but he never recorded it for the reason that the FHA found it unacceptable. In this regard, the referee found that the appellant failed to recognize an apparent conflict of interest between his employment by the FHA and his representation of the interests of Mrs. Davis.

During the investigation of this matter by the disciplinary authorities, the appellant failed to respond to numerous inquiries of the district professional responsibility committee and failed to respond to two letters from the Board in September and November of 1978. The appellant maintains that he did not refuse to cooperate in the investigation because he did write to the district committee in January of 1979 to explain his position in the matter and sent a copy of that correspondence to the Board. He also appeared before the district committee, once in March of 1979 and again in September of 1979, on this and other matters of alleged professional misconduct.

The referee concluded that the appellant's failure to promptly and judiciously pursue the title correction matter, together with his failure to communicate with his client or respond to her attorney's letters and inquiries concerning the matter, constituted neglect of a legal matter, in violation of SCR 20.32(3), and that his failure to respond to written inquiries from the Board constituted misconduct in violation of SCR 21.03(4) and 22.07(2).

The appellant argues that the referee improperly refused to admit into evidence several exhibits concerning the Davis matter. The exhibits were FHA documents which appellant argued would establish that the FHA believed it did not have a lien on the portion of the property which Mrs. Davis sought to have released from the mortgage lien. The referee properly rejected the exhibits as not being material to the issue of whether the appellant's professional conduct in undertaking to correct the errors in both the deed and mortgage amounted to neglect.

The appellant also argues that there was no evidence that the error in the description in the deed and mortgage was his fault and that, therefore, he could not be deemed to have had a duty to correct it. The referee did not reach this issue, and neither do we, for the reason that it is undisputed that the appellant, at the request of Mrs. Davis, agreed and undertook to correct the error in the deed and mortgage.

The facts underlying the third allegation of professional misconduct are as follows. In 1974 Mrs. Bresette retained the appellant to represent her in connection with an automobile accident in which her son was killed and his automobile damaged. The appellant negotiated with an insurance company adjuster and recommended to his client that she accept a nominal settlement for fu-

neral expenses and property loss. The appellant never told his client that she did not have a claim for the death of her son, if he believed that to have been the case, nor did he tell her when the statute of limitations had passed for the bringing of such a claim.

The appellant testified that he had had limited experience with accident cases and that he never fully evaluated or discussed with his client the claim that she might have had arising from her son's death. In addition, the appellant failed to respond to his client's numerous telephone inquiries and refused to see her on most occasions when she visited his office. The client was not satisfied with the recommendation of the appellant, and in 1979, after the statute of limitations had passed on an underlying cause of action for wrongful death, if one existed, the appellant turned his file over to his former partner, who had been retained by Mrs. Bresette. The matter was subsequently completed upon payment of the negotiated settlement for property loss and funeral expenses.

In September of 1978 the Board wrote to the appellant asking for a response within 10 days to the complaint it had received from Mrs. Bresette. The appellant did not respond, and the reason he gives for his failure to do so was that he had turned the client's file over to his former partner six months previously. Subsequently, the district professional responsibility committee wrote to the appellant and asked him to attend a meeting of that committee to be held March 1, 1979, and it specifically requested him to bring the client's file to that hearing. The appellant attended the meeting but did not bring the file, giving as his reason the fact that he was embarrassed to approach his former partner to obtain it.

The referee concluded that the appellant's failure to promptly and judiciously pursue the claims resulting from the automobile accident, thereby permitting the

statute of limitations to run with respect to a claim for wrongful death, if in fact one existed, together with his failure to communicate with his client, constituted misconduct in the form of neglect of a legal matter entrusted to him, in violation of SCR 20.23(3). The referee also concluded that his failure to respond to the written inquiry of the Board constituted misconduct, in violation of SCR 21.03(4) and 22.07(2).

The appellant maintains that it was error for the referee to have refused the introduction into evidence of the accident report, arguing that the report would have shown that it was impossible to determine whether Mrs. Bresette's son was driving the automobile at the time of the accident. It is the appellant's contention that such evidence, if admitted, would have established that there could have been no claim for wrongful death. The referee properly refused to admit the report into evidence for lack of materiality. The issue before the referee was not whether a claim for wrongful death existed but whether the appellant properly advised his client as to her claims arising from the accident. From the testimony of the appellant himself that he did not fully evaluate or discuss with his client any claim she might have as a result of her son's death the referee concluded that he had not.

The only issue before the referee on the fourth count of alleged professional misconduct was whether the appellant failed to cooperate with the investigation of alleged misconduct by the disciplinary authorities. The testimony at the hearing established that in June of 1978 the Board wrote to the appellant, enclosing a copy of the letter it had received from the personal representative in an estate complaining of the appellant's professional conduct in representing her and asking the appellant to respond as to the status of the probate. The ap-

pellant testified that he responded to his client in October of 1978 but that on several occasions when she telephoned him, he did not talk with her and that he did not respond to her letters asking when the estate would be closed. The appellant's testimony was that he did not respond to his client's requests for information for the reason that there had been no change in the status of the matter since his previous contact with her.

The referee found that the appellant failed to answer numerous inquiries of his client made by telephone and letter and failed to respond to numerous requests and inquiries made by the Board, and he concluded that such conduct was willful, deliberate and a breach of the duty owed to a client by a member of the State Bar. The referee held that such failure constituted misconduct, in violation of SCR 21.03(4) and SCR 22.07(2).

The appellant argues that his having sent a written report to the district professional responsibility committee on August 8, 1978 and his appearance before that committee in March and again in September of 1979 indicate that he did not fail to cooperate in the investigation so as to merit discipline.

The fifth allegation of alleged professional misconduct concerned the appellant's representation of a client in an estate proceeding. Probate proceedings were commenced in May of 1971, and the appellant had the decedent's will proved and his client appointed personal representative, notwithstanding the fact that there were only joint assets in the estate. Testimony at the hearing established that the Wisconsin inheritance tax return was filed late and that the client paid the resulting interest and penalty. Even though all joint assets were transferred to the surviving joint tenant in 1971, as of December 6, 1980, the date of the hearing before the referee, the appellant had not had his client discharged as personal representative.

In 1973 the client moved from Wisconsin to Ohio and retained counsel there in 1978 to draft her will. In February of 1978 her attorney wrote to the appellant seeking information regarding his client's assets, and the appellant responded. The attorney again wrote to the appellant in March of 1978, asking for further information. The appellant did not respond to that letter for the reason that he was in telephone contact with the client herself.

The attorney wrote to the appellant in October of 1978 informing him that the Internal Revenue Service had contacted his client concerning her failure to file personal income tax returns for a number of years. The appellant did not respond to that letter, and the attorney again wrote, this time by certified mail, asking for the return of the client's assets being held by the appellant. Once again the appellant did not respond, although he testified that he had been talking with the client herself about such matters. The appellant testified that at the time he received the October 31, 1978 certified letter, he was not aware that in fact he was a joint tenant with the client on a checking account in Wisconsin. His testimony indicated that the balance of that account was returned to the client's attorney in July of 1979, almost a full year after her attorney's specific request for it.

After the appellant did not respond to a January, 1979 letter from the Ohio attorney, the client obtained local counsel in Wisconsin to represent her. The Ohio attorney wrote to the appellant in June of 1979, indicating that the State of Wisconsin had demanded a sum of money from the client as tax on a capital gain in 1973, but the appellant did not respond.

From these facts the referee concluded that the appellant's failure to promptly and judiciously conclude the estate matters, together with his failure to communicate with his client and to respond to inquiries made on her

behalf by other counsel, constituted neglect of a legal matter entrusted to him, in violation of SCR 20.32(3).

Because the material facts in the disciplinary proceeding are not in dispute, the only matters presented to us on appeal are the referee's conclusions of law that the appellant's conduct violated the disciplinary rules of our code of professional responsibility, SCR ch. 20. We are not required to give special deference to the conclusions reached by the referee, as we would be had there been issues of fact before us. *First National Leasing Corp. v. Madison, supra.* We agree with the referee's conclusions that the appellant's failure to promptly and judiciously pursue the Benson divorce matter, the Davis title correction matter, the claims arising from the automobile accident and the estate matter, combined with his failure to communicate with his clients and attorneys representing them, constituted professional misconduct in the form of neglect of legal matters entrusted to him, in violation of SCR 20.32(3).

We are also in agreement with the conclusions that the appellant's numerous failures to respond to inquiries and correspondence from the district grievance committee and the Board constituted professional misconduct. Our rule requiring an attorney being investigated for professional misconduct to fully and fairly disclose all facts and circumstances pertaining to the alleged misconduct states, in pertinent part, "Failure to provide information or misrepresentation in a disclosure is misconduct." SCR 22.07(2). Cooperation with disciplinary investigations conducted by district grievance committees and the Board is essential to the effectiveness of such investigations, and a lawyer's failure to cooperate constitutes serious misconduct. *State v. Kennedy,* 20 Wis. 2d 513, 123 N.W.2d 449 (1963), *In the Matter of Disciplinary Pro-*

*ceedings Against Kennedy,* 104 Wis. 2d 1, 309 N.W.2d 843 (1981).

As to the discipline recommended by the referee, the appellant argues that a 60-day suspension of his license to practice law is too harsh and that a public reprimand would be appropriate. Although it did not cross-appeal from the referee's report, the Board suggests that a period of suspension longer than 60 days is called for. In support of its position the Board cites *Disciplinary Proceedings Against Bader,* 103 Wis. 2d 304, 307 N.W.2d 655 (1981), in which the referee had recommended a 60-day suspension of the attorney's license on a record consisting of five instances of professional misconduct. On our own motion we ordered the parties in that case to file briefs on the question of the appropriateness of the recommended discipline to the unprofessional conduct. Because of the number and serious nature of the misconduct involved, we ordered the attorney's license to be suspended for a period of six months.

The Board argues that because the professional misconduct in *Bader* is basically similar to the professional misconduct in the present case, a six-month suspension of the appellant's license would be appropriate. However, in *Bader* the misconduct consisted of several instances of active misrepresentation by the lawyer to his client or others: payment of abstract fees with NSF checks, misrepresentation that he was reopening the case of a client against whom he had allowed a default judgment to be entered, an attempt to have his client execute a deed in performance of a contract before the benefits of that contract had been received, release of escrowed funds and allowing a buyer to offset amounts under a contract without his client's authorization.

In the case before us there are no allegations of dishonesty, misrepresentation, mishandling of funds or mor-

al turpitude. The appellant has been found guilty of professional misconduct in the form of non-feasance, rather than misfeasance. This is not to say that with respect to a lawyer's duty to his client, non-feasance is not as serious as misfeasance. Both constitute a breach of that duty, but it does not follow that discipline, which is designed to protect the public, the courts and the legal profession against professional misconduct, must be of equal severity in each case. We are of the opinion that the discipline recommended by the referee is sufficient to accomplish its purpose here.

At the time of the referee's report, in which he ordered that the appellant pay the sum of $2,500 to be applied toward the costs and fees incurred in the disciplinary proceeding, the actual costs had not been ascertained. They amount to $2,896.90, and the appellant should be liable for them.

It is ordered that the appellant's license to practice law in this state is suspended for 60 days, effective November 1, 1981. It is further ordered that on or before December 31, 1981 the appellant pay to the Board of Attorneys Professional Responsibility the costs of this disciplinary proceeding in the amount of $2,896.90. In the event the costs are not paid within the time specified, the appellant's license to practice law shall be suspended forthwith.