In the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
Michael G. ARTERY, Attorney at Law:

OFFICE OF LAWYER REGULATION,
Complainant-Respondent,

v.

Michael G. ARTERY,
Respondent-Appellant.

Supreme Court

*No. 2004AP2022–D. Oral argument December 2, 2005.
—Decided February 7, 2006.*

2006 WI 11

(Also reported in 709 N.W.2d 54.)

For the respondent-appellant there was a brief by *Michael G. Artery* and *Michael G. Artery & Associates,* Delavan, and oral argument by *Edward F. Thompson.*

For the complainant-respondent there was a brief by *Robert G. Krohn* and *Roethe Krohn Pope LLP*, Edgerton, and oral argument by *Robert G. Krohn*.

¶ 1. PER CURIAM. Attorney Michael G. Artery has appealed from a referee's report concluding that he engaged in professional misconduct and recommending that his license to practice law in Wisconsin be suspended for a period of 60 days.

¶ 2. We conclude that the referee's findings of fact are supported by satisfactory and convincing evidence. We further determine that the seriousness of Attorney Artery's misconduct warrants the suspension of his license to practice law for a period of 60 days. We also agree with the referee that the costs of the proceeding, which are $5079.20 as of December 12, 2005, should be assessed against Attorney Artery.

¶ 3. Attorney Artery was licensed to practice law in Wisconsin in 1989. He has been licensed to practice in Illinois since 1972. He has not previously been the subject of a disciplinary action.

¶ 4. In August 2004 the Office of Lawyer Regulation (OLR) filed a complaint alleging that Attorney Artery engaged in misconduct with respect to his handling of six client matters. All of the matters were criminal cases in which Attorney Artery was appointed to do appellate work by the Office of the State Public Defender (SPD).

¶ 5. In the first matter, R.B. pled no contest to charges of attempted first-degree homicide while using a dangerous weapon and attempted battery to an inmate in 2000. He was sentenced to a lengthy prison term. In April 2001 Attorney Artery was appointed to represent R.B. in appellate proceedings. From April to June 2001 numerous transcripts were prepared of the proceedings. In March 2002 the trial court held a

hearing on a sentencing issue and modified the sentences imposed. R.B.'s trial counsel represented him at that hearing.

¶ 6. On May 20, 2002, the court of appeals issued an order advising that it had received correspondence from R.B. concerning difficulty he was experiencing in obtaining transcripts so he could pursue an appeal. The court of appeals noted that the attorney who had represented R.B. at trial still appeared to be the attorney of record, and it denied R.B.'s motion to compel counsel to turn over the transcripts. This order was sent to Attorney Artery. Attorney Artery failed to contact R.B. concerning the content of the court of appeals order.

¶ 7. On June 26, 2002, the SPD sent a letter to R.B., with a copy to Attorney Artery, saying they had received a letter from R.B. dated June 19, 2002, requesting information about who was representing him. The SPD informed R.B. that Attorney Artery was his appellate public defender and that R.B. should contact Attorney Artery. Attorney Artery did not contact R.B. after receiving the SPD's letter. On December 30, 2002, R.B. wrote to Attorney Artery expressing concern that R.B. had received no communication or response from Attorney Artery about the status of his appeal. Although R.B. asked Attorney Artery to respond, Attorney Artery failed to do so.

¶ 8. On January 17, 2003, R.B. filed a grievance with the OLR. Attorney Artery communicated with R.B. by telephone on March 3, 2003. R.B. wrote to Attorney Artery asking for assistance in reducing his felony conviction. Attorney Artery wrote back explaining the only method he could pursue to obtain relief from the sentence was to request that the plea be withdrawn. On March 7, 2003, Attorney Artery filed a

motion to extend the time for filing a no merit notice of appeal. On March 28, 2003, Attorney Artery filed a statement on transcript. The final transcript had been filed about one year earlier. The court of appeals extended the deadline for filing the no merit report to April 30, 2003. On April 28, 2003, Attorney Artery filed a no merit report with the court of appeals. After the court of appeals granted several extensions, R.B. filed his response to the no merit report on July 8, 2003.

¶ 9. On July 9, 2003, the circuit court held a hearing and amended R.B.'s judgments of conviction to correctly reflect that the attempted homicide was a class B felony. On November 7, 2003, the court of appeals affirmed the judgments of conviction and relieved Attorney Artery of further representation of R.B.

¶ 10. On July 15, 2003, the OLR wrote to Attorney Artery asking him to submit a supplemental response to R.B.'s grievance. Attorney Artery failed to reply. The OLR sent a follow-up letter by both first-class and certified mail. Attorney Artery signed the receipt for the certified mail but failed to reply.

¶ 11. On September 23, 2003, Attorney Artery was personally served with a letter from the OLR stating that the OLR would seek an order to show cause why Attorney Artery's license should not be suspended for willful non-cooperation due to his failure to reply to the OLR's letter of July 15, 2003. On October 2, 2003, Attorney Artery finally submitted his response to the OLR's July 15 letter.

¶ 12. The second client matter involved Attorney Artery's representation of R.G. R.G. was sentenced to five years in prison for felony theft in May 2001. A notice of intent to pursue postconviction relief was filed on R.G.'s behalf. In July 2001 Attorney Artery communicated in writing with R.G. soliciting a response to

343

identify appellate issues. Court files show no activity in the case for about 14 months.

¶ 13. On March 6, 2002, the SPD forwarded a letter it had received from R.G. to Attorney Artery. In the letter R.G. complained that Attorney Artery had not responded to R.G.'s attempts to reach him. The SPD asked Attorney Artery to inform R.G. about the status of the case and to explain to R.G. the significance of the § 809.30[1] deadline. Attorney Artery failed to correspond with R.G. as recommended by the SPD.

¶ 14. On August 8, 2002, the court of appeals issued an order stating that R.G. had filed a pro se "motion to withdraw counsel." The court sent a copy of its order denying the motion to Attorney Artery. R.G. communicated with the court of appeals and indicated he wanted to continue to appear pro se in the circuit court because Attorney Artery had failed to take any action on his behalf. In mid-August 2002 Attorney Artery spoke with R.G. about appellate issues. Attorney Artery wrote to the court asking for a copy of the transcript of the sentencing hearing held in R.G.'s case in May 2001. Attorney Artery received the transcript on August 20, 2002, but did not calendar his receipt of the transcript or the fact that R.G.'s postconviction motion was due on October 21, 2002. Attorney Artery failed to file a postconviction motion for R.G.

¶ 15. On October 24, 2002, R.G. filed a pro se motion in the circuit court seeking to discharge Attorney Artery as his counsel. The circuit court denied the motion but referred R.G. to the SPD for a determina-

---

[1] Wisconsin Stat. § 809.30 (2003–04) pertains to the appeal procedure of criminal cases in the Wisconsin Court of Appeals.

tion as to whether he was entitled to new counsel. R.G. wrote to the SPD in December 2002 asking for a new attorney.

¶ 16. On March 18, 2003, R.G. filed a grievance against Attorney Artery with the OLR, complaining that Attorney Artery had been appointed as his appellate counsel 20 months earlier but had made no progress on his behalf. On May 6, 2003, Attorney Artery filed a motion in the court of appeals seeking to extend the time for filing R.G.'s motion for postconviction relief. The motion was granted, and the time was extended to May 15, 2003. Attorney Artery filed R.G.'s motion for postconviction relief seeking withdrawal of the guilty plea on May 8, 2003. The court of appeals denied the motion on September 9, 2003.

¶ 17. The third client matter involved Attorney Artery's representation of A.S. In June 2002 A.S. was sentenced to 11 years in prison for using a dangerous weapon and being a felon in possession of a dangerous weapon. Attorney Artery was appointed to act as A.S.'s postconviction counsel in July 2002. Attorney Artery received the final transcript in the case in October 2002. On March 28, 2003, the SPD wrote to Attorney Artery advising him they had received a letter from A.S. saying he had been having trouble getting in touch with Attorney Artery for the last five months. On April 17, 2003, A.S. filed a grievance with the OLR alleging that Attorney Artery never responded to the SPD's request that he contact A.S.

¶ 18. On June 30, 2003, Attorney Artery filed with the court of appeals a motion to extend the time to file a notice of appeal/postconviction motion for A.S. The motion was granted, and the deadline was extended to July 29, 2003. Attorney Artery did not sub-

345

sequently file any documents in the A.S. case with either the circuit court or the court of appeals.

¶ 19. On July 2, 2003, the OLR wrote to Attorney Artery saying he had not earlier fully addressed the allegations contained in A.S.'s grievance. The OLR requested that Attorney Artery submit a supplemental response to the grievance by July 16, 2003. Attorney Artery failed to respond. On July 18, 2003, the OLR sent a reminder letter to Attorney Artery by both first-class and certified mail saying that his response must be postmarked no later than July 28, 2003. Attorney Artery failed to respond.

¶ 20. On August 27, 2003, Attorney Artery was personally served with a letter from the OLR attaching copies of previous correspondence. On September 3, 2003, Attorney Artery submitted a fax response to the OLR's July 2, 2003 letter.

¶ 21. On October 1, 2003, the OLR again wrote to Attorney Artery and asked him to provide a copy of his entire file, excluding transcripts and the copy of the court file that he had received from the circuit court. The OLR also asked Attorney Artery to describe the present status of A.S.'s case and to describe other activities taken on A.S.'s behalf. Attorney Artery personally signed the certified mail receipt for the letter but did not respond.

¶ 22. Although the court of appeals extended the deadline to file an appeal or postconviction motion to July 29, 2003, Attorney Artery did not file a notice of appeal or postconviction motion on A.S.'s behalf.

¶ 23. The fourth client matter involved Attorney Artery's representation of M.D., who was sentenced to six years in prison and four years of extended supervision in July 2001 as a result of a robbery with use of force conviction. Attorney Artery was appointed as

346

M.D.'s appellate counsel on August 28, 2001. A copy of the entire court file was sent to Attorney Artery on September 5, 2001, and transcripts of the circuit court proceedings were sent to him from September to November 2001.

¶ 24. In the spring of 2002, M.D. wrote to the SPD complaining that he had not had appropriate communications from Attorney Artery. The SPD wrote to Attorney Artery asking him to inform M.D. of the status of the case. On June 26, 2002, M.D. again wrote to the SPD complaining he had still heard nothing from Attorney Artery and requested that new counsel be appointed. On July 17, 2002, M.D. filed a grievance with the OLR alleging that Attorney Artery had never contacted him and had allowed the time limits for filing an appeal to expire. Attorney Artery finally filed a notice of appeal for M.D. on August 13, 2002.

¶ 25. On August 30, 2002, the OLR wrote to Attorney Artery informing him of their duty to investigate the M.D. grievance and requesting a written response by September 23, 2002. Attorney Artery failed to reply. On September 25, 2002, the OLR sent a follow-up request by certified mail. Attorney Artery signed the certified mail receipt but failed to reply.

¶ 26. On October 22, 2002, Attorney Artery was personally served with the OLR's previous correspondence about the M.D. grievance and with a cover letter dated October 17, 2002, informing Attorney Artery that if he did not respond within seven days the OLR would file a motion for temporary suspension of his license to practice law. Attorney Artery submitted a written response on October 28, 2002. He advised the OLR he did not contact M.D. prior to August 8, 2002, because of his heavy caseload. He also claimed that his heavy caseload was the reason he had failed to respond to the SPD,

failed to file a timely notice of appeal for M.D., and failed to respond to the OLR's previous letters.

¶ 27. The fifth client matter involved Attorney Artery's representation of S.T., who was sentenced to 36 years in prison on a homicide charge and five years in prison on each of several endangering safety counts in late 2000. Attorney Artery was appointed to represent S.T. regarding the appeal of his conviction on December 12, 2000. Soon after receiving word of Attorney Artery's appointment, S.T. sent Attorney Artery a letter asking him to let him know whether he was in possession of the trial transcripts and whether he had reviewed them and to otherwise keep S.T. informed about the case status. On November 15, 2001, S.T. wrote to Attorney Artery asking for an update on his appeal.

¶ 28. S.T. wrote to the SPD on December 25, 2001. On January 11, 2002, the SPD wrote to Attorney Artery enclosing a copy of S.T.'s letter and asking him to respond to S.T. about his concerns. There was no indication Attorney Artery responded to that letter.

¶ 29. S.T. filed a grievance with the OLR in April 2002 saying he had heard nothing from Attorney Artery even though S.T. had been incarcerated for 17 months. In May 2002 Attorney Artery picked up a trial file from S.T.'s trial attorney. Attorney Artery reviewed the file in October 2002. He sent a request to the court reporter asking for portions of trial transcripts that were missing. He received the last of the transcripts on October 18, 2002.

¶ 30. S.T.'s first contact from Attorney Artery was in the form of a phone call in October 2002, almost two years after Attorney Artery had been appointed as S.T.'s counsel. During the call, Attorney Artery informed S.T. that he was missing the trial transcripts and asked that S.T. be patient with him. After receiving several exten-

sions to file a notice of appeal and postconviction motion, Attorney Artery filed a notice of appeal on S.T.'s behalf on October 30, 2002. In November 2003 the court of appeals issued a summary disposition affirming the judgment of conviction. Attorney Artery filed a petition for review on S.T.'s behalf, which was denied.

¶ 31. The final client matter involved Attorney Artery's representation of A.R., who was sentenced to prison for burglary and use of a dangerous weapon in late 1999. A.R.'s original appellate counsel failed to file a petition for review with this court in a timely fashion. On August 28, 2001, Attorney Artery was appointed to represent A.R. for the purpose of filing a habeas corpus petition in this court alleging that prior appellate counsel had provided ineffective assistance by failing to timely file a petition for review. On February 1, 2002, A.R. wrote to Attorney Artery and described the issues that he believed would have merit in a postconviction motion. In late April 2002 A.R. complained to the SPD about Attorney Artery's failure to communicate with him. On May 8, 2002, A.R. requested a copy of transcripts from Attorney Artery, and Attorney Artery promptly provided them.

¶ 32. On May 20, 2002, Attorney Artery and A.R. spoke by telephone. Attorney Artery told A.R. that a habeas corpus petition would be filed shortly. Attorney Artery did not file such a petition. On June 17, 2002, Attorney Artery informed the SPD that he was working on a habeas corpus petition. On June 19, 2002, the SPD received a letter from A.R. complaining that Attorney Artery had not filed the habeas corpus petition. Attorney Artery informed the SPD that he would have the habeas corpus petition prepared within two weeks.

¶ 33. On July 9, 2002, A.R. filed a grievance with the OLR complaining that Attorney Artery had failed to

file a habeas corpus petition, had failed to communicate with him, and had failed to follow his directives regarding advancing additional issues. In early October 2002 Attorney Artery contacted the SPD and advised that the habeas corpus petition would be filed by October 14. Attorney Artery filed the petition for writ of habeas corpus on October 25, 2002.

¶ 34. Attorney Artery wrote to A.R. and enclosed a copy of the petition for writ of habeas corpus. In the letter, Attorney Artery acknowledged he had not prepared the petition until recently, that he waited to file it to see the results in an unrelated case, and that he did not inform A.R. of his decision to wait for the outcome in the other case because A.R. lacked confidence in attorneys. On December 10, 2002, this court granted the petition for writ of habeas corpus but denied the petition for review.

¶ 35. On November 19, 2002, the OLR sent A.R.'s grievance to Attorney Artery and asked him to provide a written response by December 12. Attorney Artery failed to respond. On December 17, 2002, the OLR sent a follow-up letter to Attorney Artery by both certified and first-class mail. The certified letter was returned to the OLR as unclaimed but the first-class letter was not returned. Attorney Artery failed to respond to the OLR's letter.

¶ 36. In his answer to the OLR's complaint, Attorney Artery admitted virtually all of the OLR allegations. David R. Friedman was appointed referee in the matter. In his report dated March 28, 2005, the referee noted that the main issues to be resolved were the factual allegations in the OLR's complaint concerning Attorney Artery's failure to cooperate with the OLR in its investigation of the A.R. grievance and the appropriate discipline to be imposed.

¶ 37. The OLR's complaint alleged, and the referee found, that by failing to communicate with R.B., M.D. and A.R., Attorney Artery violated SCR 20:1.4(a).[2] The complaint also alleged, and the referee found, that Attorney Artery's handling of cases for R.G., A.S., M.D., S.T., and A.R. violated SCR 20:1.3.[3] The OLR's complaint also alleged, and the referee found, that by failing to consult with, and to inform A.R. shortly after their telephone conversation in May 2002 that Attorney Artery had decided to delay filing a petition for writ of habeas corpus pending the progression of another unrelated case when Attorney Artery had previously told A.R. he would be filing a petition very shortly, Attorney Artery violated SCR 20:1.2(a).[4]

¶ 38. The OLR's complaint also alleged, and the referee found, that by failing to respond to the OLR's letters in the R.B. case, Attorney Artery violated SCR 22.03(4) and (6).[5] The OLR's complaint further alleged, and the referee agreed, that by failing to respond to

[2] SCR 20:1.4(a) provides that "[a] lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information."

[3] SCR 20:1.3 provides that "[a] lawyer shall act with reasonable diligence and promptness in representing a client."

[4] SCR 20:1.2 provides in relevant part: Scope of representation.

> (a) A lawyer shall abide by a client's decisions concerning the objectives of representation . . . and shall consult with the client as to the means by which they are to be pursued. A lawyer shall inform a client of all offers of settlement and abide by a client's decision whether to accept an offer of settlement of a matter. In a criminal case or any proceeding that could result in deprivation of liberty, the lawyer shall abide by the client's decision, after consultation with the lawyer, as to a plea to be entered, whether to waive jury trial and whether the client will testify.

[5] SCR 22.03 provides in relevant part: Investigation.

351

letters from the OLR requesting information in the M.D. and A.R. grievances, Attorney Artery violated SCR 21.15(4)[6] and SCR 22.03(2).[7]

> (4) If the respondent fails to respond to the request for written response to an allegation of misconduct or fails to cooperate in other respects in an investigation, the director, or a special investigator acting under SCR 22.25, may file a motion with the supreme court requesting that the court order the respondent to show cause why his or her license to practice law should not be suspended for willful failure to respond or cooperate with the investigation. All papers, files, transcripts, communications, and proceedings on the motion shall be confidential and shall remain confidential until the supreme court has issued an order to show cause. The license of an attorney suspended for willful failure to respond or cooperate with an investigation may be reinstated by the supreme court upon a showing of cooperation with the investigation and compliance with the terms of suspension. The director or the special investigator shall file a response in support of or in opposition to the reinstatement within 20 days after the filing of an attorney's request for reinstatement. Upon a showing of good cause, the supreme court may extend the time for filing a response.
>
> . . . .
>
> (6) In the course of the investigation, the respondent's wilful failure to provide relevant information, to answer questions fully, or to furnish documents and the respondent's misrepresentation in a disclosure are misconduct, regardless of the merits of the matters asserted in the grievance.

[6] SCR 21.15(4) provides that "[e]very attorney shall cooperate with the office of lawyer regulation in the investigation, prosecution and disposition of grievances, complaints filed with or by the director, and petitions for reinstatement. An attorney's wilful failure to cooperate with the office of lawyer regulation constitutes violation of the rules of professional conduct for attorneys."

[7] SCR 22.03 provides in relevant part: Investigation.

> (2) Upon commencing an investigation, the director shall notify the respondent of the matter being investigated unless in the opinion of the director the investigation of the matter requires

¶ 39. The referee noted that Attorney Artery denied receiving either the November 19, 2002, or December 17, 2002, letters the OLR sent regarding the A.R. grievance. The referee noted that the law in Wisconsin is that when notice is sent by mail and it is not returned, the presumption is the mail was delivered. *See State ex rel. Flores v. State,* 183 Wis. 2d 587, 612, 516 N.W.2d 362 (1994). The referee noted this presumption may be overcome if the proposed recipient denied receipt of the mailing and the issue then becomes "one of credibility for the factfinder." *Id.* at 613.

¶ 40. The referee noted that the OLR investigator submitted an affidavit stating she sent the two letters regarding the A.R. grievance to Attorney Artery at his office address, which was the same address where all other correspondence was sent and received. Attorney Artery submitted an affidavit denying receipt of either letter. The referee said based on Attorney Artery's affidavit alone it was difficult to make a credibility finding. The referee, however, noted that *In re Disciplinary Proceedings Against Kelsay,* 155 Wis. 2d 480, 455 N.W.2d 871 (1990), this court upheld the referee's finding that an attorney's refusal to respond to two letters sent by the Board of Attorney's Professional Responsibility (the predecessor to the OLR) and the attorney's refusal to accept delivery of a certified letter violated supreme court rules. The referee specifically

otherwise. The respondent shall fully and fairly disclose all facts and circumstances pertaining to the alleged misconduct within 20 days after being served by ordinary mail a request for a written response. The director may allow additional time to respond. Following receipt of the response, the director may conduct further investigation and may compel the respondent to answer questions, furnish documents, and present any information deemed relevant to the investigation.

concluded that Attorney Artery's claim that he did not receive the two letters sent by the OLR was not credible and his refusal to claim a certified letter did not provide a defense that he had no knowledge of the letters.

¶ 41. Turning to the question of the appropriate discipline to impose for Attorney Artery's misconduct, the referee noted that the case involved 12 different violations of seven different supreme court rules. The referee noted that the OLR requested a 60–day suspension of Attorney Artery's license, while Attorney Artery requested a reprimand based on the fact that he had been practicing law since 1972 and had no prior disciplinary history.

¶ 42. The referee also noted Attorney Artery said the reason for his actions was because he accepted too many appointments at the appellate level from the SPD's office. The referee said he recognized that at times an attorney's workload could be overwhelming but when that situation occurred the attorney should seek assistance to help resolve the problem and Attorney Artery failed to do this.

¶ 43. The referee said Attorney Artery's failures were serious and had the potential to jeopardize his client's rights. While the referee said there was no showing that Attorney Artery's pattern of misconduct was malicious, he found it did represent a deliberate indifference to his obligation as an attorney. The referee pointed to Attorney Artery's willingness to admit to the violations and said it appeared Attorney Artery understood the seriousness of the misconduct. The referee concluded that a 60–day suspension of Attorney Artery's license to practice law would protect the courts and the legal system from the repetition of Attorney Artery's misconduct and would warn other attorneys not to engage in similar behavior.

¶ 44. Attorney Artery appealed, arguing that the evidence was insufficient to show that he failed to cooperate with the OLR in the A.R. case and that a 60–day suspension of his license was unduly harsh. Attorney Artery admits that he failed to act with reasonable diligence and promptness when representing his clients, but he asserts no actual harm to the clients resulted from his actions.

¶ 45. The OLR argues that while Attorney Artery's appeal focuses on the non-cooperation issues, the far more serious issues in the case, which Attorney Artery has admitted, relate to his repeated pattern of misconduct, primarily dealing with poor communication and lack of diligence as to all six clients. The OLR notes that the clients were incarcerated and thus were vulnerable. The OLR asserts that even absent the referee's findings that Attorney Artery failed to cooperate with the OLR, the other counts of misconduct would still warrant the imposition of the 60–day suspension.

¶ 46. This court will adopt a referee's findings of fact unless they are clearly erroneous. Conclusions of law are reviewed de novo. *See In re Disciplinary Proceedings Against Eisenberg,* 2004 WI 14, ¶ 5, 269 Wis. 2d 43, 675 N.W.2d 747. The court may also impose whatever sanction it sees fit regardless of the referee's recommendation. *See In re Disciplinary Proceedings Against Widule,* 2003 WI 34, ¶ 44, 261 Wis. 2d 45, 660 N.W.2d 686. The referee's findings of fact in this case have not been shown to be clearly erroneous, and we adopt them.

¶ 47. As the referee noted, the question of whether or not Attorney Artery received the two letters from the OLR regarding the A.R. grievance required

the referee to make a finding on Attorney Artery's credibility. All correspondence from the OLR was sent to Attorney Artery at his office address. Attorney Artery admits receiving all other letters, and the A.R. letters that were sent by regular mail were not returned to the OLR. The referee's finding that Attorney Artery's claim that he did not receive the letters was not credible appears to be reasonable. Attorney Artery admits he did not respond to the requests for information in the M.D. and R.B. matters until he was personally served with the notices that the OLR would seek a temporary suspension of his license if he continued to fail to respond. Under the circumstances, the referee's findings that Attorney Artery failed to cooperate with the investigation of grievances is not clearly erroneous.

¶ 48. As to the appropriate discipline, as the OLR points out, Attorney Artery has admitted that he failed to provide diligent representation to six separate criminal clients. He attempts to excuse his failures by saying he took on more SPD work than he was actually able to handle. We note, as did the referee, that Attorney Artery has no prior disciplinary history. If he had been previously disciplined, a longer suspension would be appropriate. Under the circumstances, we agree with the referee that a 60–day suspension of Attorney Artery's license to practice law in Wisconsin is an appropriate sanction for these violations. We also find it appropriate for Attorney Artery to pay the costs of the proceeding.

¶ 49. IT IS ORDERED that the license of Michael G. Artery to practice law in Wisconsin is suspended for a period of 60 days, effective March 14, 2006, and until further order of the court.

356

¶ 50. IT IS FURTHER ORDERED that within 60 days of the date of this order, Michael G. Artery shall pay to the Office of Lawyer Regulation the costs of this proceeding, provided that if the costs are not paid within the time specified and absent a showing to this court of his inability to pay the costs within that time, the license of Michael G. Artery to practice law in Wisconsin shall remain suspended until further order of the court.

¶ 51. IT IS FURTHER ORDERED that Michael G. Artery comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.