IN the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
Jay M. LANGKAMP, Attorney at Law:

OFFICE OF LAWYER REGULATION,
Complainant,

v.

Jay M. LANGKAMP,
Respondent.

Supreme Court

*No. 2008AP2283–D.—Decided December 1, 2009.*

2009 WI 102

(Also reported in 805 N.W.2d 487.)

ATTORNEY disciplinary proceeding. *Attorney's license suspended.*

¶ 1. PER CURIAM. We review the amended stipulation filed by Attorney Jay M. Langkamp and the Office of Lawyer Regulation (OLR) pursuant to SCR 22.12,[1] wherein Attorney Langkamp admits to the facts and misconduct alleged by the OLR as set forth in the parties' stipulation. Attorney Langkamp admits to 15 counts of misconduct involving four clients. The misconduct includes failing to communicate with a client; unilaterally terminating his representation of clients and failing to protect the clients' interests by giving them reasonable notice to employ another attorney; failing to refund the portion of fees that were not earned; and failing to provide a written response to client grievances.

¶ 2. We adopt the stipulated facts and conclusions of law. We agree that Attorney Langkamp's misconduct warrants suspension of his license to practice law for a period of 60 days. The parties do not seek to impose the

---

[1] SCR 22.12 provides. Stipulation.

(1) The director may file with the complaint a stipulation of the director and the respondent to the facts, conclusions of law regarding misconduct, and discipline to be imposed. The supreme court may consider the complaint and stipulation without the appointment of a referee.

(2) If the supreme court approves a stipulation, it shall adopt the stipulated facts and conclusions of law and impose the stipulated discipline.

(3) If the supreme court rejects the stipulation, a referee shall be appointed and the matter shall proceed as a complaint filed without a stipulation.

(4) A stipulation rejected by the supreme court has no evidentiary value and is without prejudice to the respondent's defense of the proceeding or the prosecution of the complaint.

costs of this proceeding upon Attorney Langkamp and we accede to that recommendation.

¶ 3. Attorney Langkamp was admitted to practice law in Wisconsin in 1996 and practiced in Dane County. He currently resides in New York State.

¶ 4. On October 31, 2007, Attorney Langkamp's license to practice law in Wisconsin was suspended for nonpayment of dues. On February 22, 2008, this court suspended his license based on his failure to cooperate in grievance investigations. The OLR subsequently informed this court that Attorney Langkamp had provided a response to the OLR's inquiry, and that a suspension of his license was no longer needed to induce him to cooperate in the ongoing grievance investigation. On September 9, 2008, this court terminated the temporary suspension. The administrative suspension for failure to pay bar dues remains in effect.

¶ 5. On September 15, 2008, the OLR filed a complaint alleging that Attorney Langkamp engaged in professional misconduct with respect to his representation of three clients. The first matter addressed in the complaint involved Attorney Langkamp's representation of B.C., who hired Attorney Langkamp to represent him in eight traffic cases in October 2006. B.C. paid Attorney Langkamp $750 in legal fees.

¶ 6. Attorney Langkamp entered an appearance in one of the cases in February 2007. On July 19, 2007, an assistant district attorney asked the circuit court to continue B.C.'s court date because he had been unable to contact Attorney Langkamp by telephone and had heard that Attorney Langkamp was moving to New York. B.C. said he had not spoken to Attorney Langkamp in a month.

¶ 7. On July 23, 2007, the circuit court wrote to Attorney Langkamp at his New York address stating

255

that Attorney Langkamp had not appeared for hearings scheduled in June and July, and that B.C.'s eight court trials had been postponed due to Attorney Langkamp's nonappearance. On September 8, 2007, B.C. requested fee arbitration with Attorney Langkamp. B.C. subsequently filed a grievance against Attorney Langkamp with the OLR.

¶ 8. On September 25, 2007, the OLR provided Attorney Langkamp with notice of the grievance investigation. In spite of repeated requests from the OLR, Attorney Langkamp failed to respond.

¶ 9. The OLR's complaint alleged that by failing to timely advance B.C.'s interests in eight traffic cases, Attorney Langkamp violated SCR 20:1.3;[2] by failing to communicate with B.C. during the month prior to a hearing scheduled for July 23, 2007, Attorney Langkamp violated SCR 20:1.4(a)(3);[3] by failing to advise B.C. that he left Wisconsin and relocated to New York, by unilaterally terminating his representation of B.C., by failing to protect B.C.'s interests by giving him reasonable notice to employ another attorney, and by failing to refund the portion of the fee he had not earned, Attorney Langkamp violated SCR 20:1.16(d);[4] and by failing to provide a written response to B.C.'s

---

[2] SCR 20:1.3 states "[a] lawyer shall act with reasonable diligence and promptness in representing a client."

[3] SCR 20:1.4(a)(3) provides a lawyer shall "keep the client reasonably informed about the status of the matter; . . ."

[4] SCR 20:1.16(d) (effective July 1, 2007) provides as follows:

> Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to

grievance, Attorney Langkamp violated SCR 22.03(2) and SCR 22.03(6),[5] actionable via SCR 20:8.4(h).[6]

¶ 10. The second client matter detailed in the OLR's complaint involved Attorney Langkamp's representation of R.W., who hired Attorney Langkamp to represent him in a felony drug case and paid him $800 to $900 for the representation. Attorney Langkamp entered an appearance for R.W. on January 22, 2007. During the course of the representation, Attorney

which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by other law.

[5] SCR 22.03(2) and SCR 22.03(6) provide as follows: Investigation.

(2) Upon commencing an investigation, the director shall notify the respondent of the matter being investigated unless in the opinion of the director the investigation of the matter requires otherwise. The respondent shall fully and fairly disclose all facts and circumstances pertaining to the alleged misconduct within 20 days after being served by ordinary mail a request for a written response. The director may allow additional time to respond. Following receipt of the response, the director may conduct further investigation and may compel the respondent to answer questions, furnish documents, and present any information deemed relevant to the investigation.

. . .

(6) In the course of the investigation, the respondent's wilful failure to provide relevant information, to answer questions fully, or to furnish documents and the respondent's misrepresentation in a disclosure are misconduct, regardless of the merits of the matters asserted in the grievance.

[6] SCR 20:8.4(h) (effective July 1, 2007) states it is professional misconduct for a lawyer to "fail to cooperate in the investigation of a grievance filed with the office of lawyer regulation as required by SCR 21.15(4), SCR 22.001(9)(b), SCR 22.03(2), SCR 22.03(6), or SCR 22.04(1); . . ."

Langkamp was late for two hearings and failed to show up for a third hearing, failed to timely return R.W.'s phone calls, and failed to update the court regarding R.W.'s new address.

¶ 11. Attorney Langkamp told R.W. he would try to work out a plea agreement. After Attorney Langkamp had missed a court hearing, R.W. tried to reach him ten times but was unable to do so. R.W. did not know when his next court date was scheduled. On June 28, 2007, while in court waiting for Attorney Langkamp, R.W. learned from the district attorney that Attorney Langkamp had moved to New York.

¶ 12. In August 2007 R.W.'s aunt filed a telephonic grievance against Attorney Langkamp. The OLR provided Attorney Langkamp notice of the grievance investigation. In spite of repeated requests, Attorney Langkamp failed to respond to the OLR. The circuit court ordered Attorney Langkamp to refund the fees R.W. had paid.

¶ 13. The OLR's complaint alleged that by failing to attempt to work out a plea bargain, failing to appear at a hearing, failing to provide the circuit court with his client's change of address, and failing to otherwise timely advance his client's interests in R.W.'s criminal case, Attorney Langkamp violated SCR 20:1.3. The complaint also alleged that by failing to communicate to R.W. that he would not be at a hearing, by failing, after the missed hearing, to respond to at least 10 phone calls from R.W., and by failing to advise R.W. of the date of a court hearing, Attorney Langkamp violated former SCR 20:1.4(a)[7] and SCRs 20:1.4(a)(3) and

---

[7] Former SCR 20:1.4(a) (effective through June 30, 2007), provided, "A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information."

(4).[8] The complaint also alleged that by failing to advise R.W. he had relocated to New York, by unilaterally terminating his representation of R.W., and failing to protect R.W.'s interests by giving him reasonable notice to employ another attorney, and by failing to refund the portion of the fee he had not earned, Attorney Langkamp violated SCR 20:1.16(d). The complaint also alleged that by failing to provide a written response to R.W.'s grievance, Attorney Langkamp violated SCRs 22.03(2) and 22.03(6), enforced via SCR 20:8.4(h).

¶ 14. The final client matter detailed in the OLR's September 15, 2008, complaint involved Attorney Langkamp's representation of A.B. who had hired Attorney Langkamp on March 1, 2007, to represent him in divorce and criminal cases. A.B. signed a fee agreement and paid Attorney Langkamp $750 for the criminal case and $400 for the divorce case. On March 29, 2007, A.B. received pretrial conference documents from an assistant district attorney in the criminal case. A.B. faxed the documents to Attorney Langkamp, but the fax number was not working so A.B. sent the documents to Attorney Langkamp by e-mail.

¶ 15. On April 11, 2007, Attorney Langkamp sent A.B. an e-email saying he had tried to talk to the assistant district attorney but she was out of the office. The district attorney's office informed A.B. they had no response from anyone representing him and no record that he had an attorney. A.B. called Attorney Langkamp, who said he had filed the appropriate paperwork. A.B. never received copies of the purported filing.

---

[8] SCRs 20:1.4(a)(3) and (4) (effective July 1, 2007) state a lawyer shall "(3) keep the client reasonably informed about the status of the matter;" and "(4) promptly comply with reasonable requests by the client for information; . . ."

¶ 16. A.B. received a letter informing him he had a court appearance on May 22, 2007. He forwarded that information to Attorney Langkamp, who did not respond. On May 18, 2007, A.B. called the clerk of courts office about his criminal case and was told he had no attorney of record. A.B. told the clerk that Attorney Langkamp was his attorney. That same day, Attorney Langkamp was entered as A.B.'s attorney in the criminal case.

¶ 17. A.B. said Attorney Langkamp never asked him any questions about the criminal case and advised him to plead guilty even though there were no witnesses or physical evidence of guilt. A.B. followed Attorney Langkamp's advice and pled guilty. Attorney Langkamp appeared with A.B. at the plea hearing on May 22, 2007. Pursuant to a plea agreement, two battery counts were made the subject of a deferred prosecution agreement, and the remaining charges were dismissed.

¶ 18. After the criminal case was resolved, A.B. continued to have communication problems with Attorney Langkamp in the divorce case. Attorney Langkamp had entered his appearance in that case on April 24, 2007. On May 3, 2007, A.B. sent a FedEx parcel to Attorney Langkamp containing one money order and all of his critical divorce information. A.B. never heard back from Attorney Langkmap about the shipment, and the information never reached A.B.'s wife's attorney.

¶ 19. On July 19, 2007, counsel for A.B.'s wife filed an affidavit in support of a contempt motion against A.B. for failing to provide joint tax returns and failing to provide proof of the minimum monthly amount paid on all debts pursuant to a court order. A.B. was sent notice of a hearing scheduled for August 9, 2007, on the contempt matter and tried to contact Attorney Langkamp about it. Although A.B. sent Attor-

ney Langkamp over ten e-mails and left over 20 voice mail messages, Attorney Langkamp failed to respond.

¶ 20. On August 6, 2007, A.B. sent Attorney Langkamp another FedEx parcel. On August 8, 2007, A.B. received a phone call from Attorney Langkamp's property owner saying she had in her possession several FedEx packages that A.B. had sent to Attorney Langkamp. The property owner informed A.B. that Attorney Langkamp had moved to New York months earlier. Attorney Langkamp never advised A.B. that he had left Wisconsin.

¶ 21. When A.B. went to court on August 9, 2007, Attorney Langkamp was in the waiting room and apologized for his lack of work ethic. Despite A.B. providing the court satisfactory documentation of his bill payments, counsel for A.B.'s wife asked that A.B. pay $285 to her firm for court fees. The order to show cause for contempt was withdrawn on the condition that A.B. pay the fees by September 9, 2007.

¶ 22. On August 9, 2007, A.B. asked Attorney Langkamp for new contact information. Attorney Langkamp provided what proved to be an inactive telephone number. This was the last time A.B. spoke to Attorney Langkamp. On September 19, 2007, Attorney Langkamp e-mailed to A.B. a settlement proposed by A.B.'s wife's attorney that contained inaccuracies. A.B. was subsequently unable to contact Attorney Langkamp.

¶ 23. On October 17, 2007, A.B. filed a grievance against Attorney Langkamp. On December 3, 2007, the circuit court permitted the removal of Attorney Langkamp as A.B.'s attorney of record in the divorce case. On December 26, 2007, A.B. requested $1,150 from the Wisconsin Lawyers Fund for Client Protection.

¶ 24. The OLR provided Attorney Langkamp with notice of A.B.'s grievance investigation on December 14, 2007. In spite of repeated requests, Attorney Langkamp failed to respond.

¶ 25. The OLR's complaint alleged that by failing in A.B.'s divorce case to forward information to the opposing party's counsel, resulting in an order to show cause against A.B. for contempt, and by otherwise failing to timely advance A.B.'s interests, Attorney Langkamp violated SCR 20:1.3. The complaint also alleged that by failing to respond to A.B.'s ten e-mails and 20 voice mail messages in the course of the divorce representation, failing to provide A.B. with a current address, failing to communicate with A.B. prior to the contempt hearing in the divorce, and failing to communicate with A.B. after September 19, 2007, while the divorce was still pending, Attorney Langkamp violated SCR 20:1.4(a).

¶ 26. The OLR's complaint also alleged by unilaterally terminating his representation of A.B. in the divorce case and then failing to protect A.B.'s interests by giving him reasonable notice to employ another attorney, by failing to give A.B. reliable contact information and failing to refund the portion of the fee he had not earned, Attorney Langkamp violated SCR 20:1.16(d). The complaint further alleged that by failing to provide a required written response to A.B.'s grievance, notwithstanding written notice, Attorney Langkamp violated SCRs 22.03(2) and 22.03(6), enforced via SCR 20:8.4(h).

¶ 27. On December 3, 2008, the OLR and Attorney Langkamp entered into a stipulation whereby Attorney Langkamp stipulated to the misconduct alleged in the OLR's September 15, 2008, complaint. After the stipulation was filed with this court, the OLR advised the court that the preliminary review committee had authorized the finding of additional misconduct charges against

Attorney Langkamp and that it was appropriate to combine all charges within a single disciplinary proceeding.

¶ 28. An amended SCR 22.12 stipulation was filed on April 14, 2009. The new stipulation added three additional counts of misconduct involving a fourth client, W.J. W.J. retained Attorney Langkamp in December 2001 to represent him in a second-degree child sexual assault case in Dane County. On July 17, 2002, W.J. was found guilty of five out of seven counts of second-degree sexual assault of a child and was sentenced to five years initial confinement and ten years extended supervision. That same day a notice of right to seek post-conviction relief was filed indicating W.J.'s intent to appeal.

¶ 29. Attorney Langkamp discussed a possible appeal with W.J. both before and after sentencing and met with W.J.'s wife on more than one occasion to discuss a possible appeal. Attorney Langkamp filed a notice of intent to pursue post-conviction relief on August 5, 2002. He met with W.J. on several occasions at the Milwaukee Secure Detention Facility. In October 2002 Attorney Langkamp sent the court reporter a check for payment of transcripts from the trial court proceedings. Attorney Langkamp reviewed the transcripts but failed to file any further documents stating that a claim or appeal would be filed on W.J.'s behalf. Attorney Langkamp never told W.J. he would not handle the appeal, did not consult with W.J. about his options, and did not inform W.J. of the appellate deadlines.

¶ 30. Attorney Langkamp received many phone calls from W.J.'s wife asking about the appeal. Attorney Langkamp failed to return those calls. Attorney Langkamp met with W.J.'s wife in February 2003 to assist her in researching issues for W.J.'s appeal. Attor-

ney Langkamp failed to correspond with W.J., failed to inform him about his prospects on appeal, failed to act according to W.J.'s directions regarding an appeal, failed to file an appeal, and failed to close out the case in any fashion.

¶ 31. In December 2004 W.J. hired other counsel to represent him in the post-conviction matters. In June 2007 W.J. filed a petition for writ of habeas corpus with the court of appeals alleging that Attorney Langkamp and successor counsel abandoned his direct right of appeal. The court of appeals remanded the matter to the trial court. In December 2007 the trial court issued findings of fact on the writ finding that the attorney-client relationship between W.J. and Attorney Langkamp continued beyond the trial phase of the case, including post-conviction relief and direct appeal. In February 2008 the court of appeals granted W.J.'s writ of habeas corpus and reinstated his time to pursue post-conviction relief.

¶ 32. The parties' amended stipulation states Attorney Langkamp stipulates that by failing to pursue post-conviction relief in the circuit court, and failing to file an appeal or formally close out the representation as of the time W.J. obtained successor counsel, Attorney Langkamp violated SCR 20:1.3. Attorney Langkamp also stipulates that by failing to follow W.J.'s direction to appeal his conviction, failing to correspond with W.J. about the prospects of an appeal, or to explain to W.J. post-conviction options and the applicable deadlines, Attorney Langkamp violated former SCR 20:1.2(a)[9] and

---

[9] Former SCR 20:1.2(a) (effective through June 30, 2007) provides:

> A lawyer shall abide by a client's decisions concerning the objectives of representation, subject to paragraphs (c), (d) and (e),

SCR 20:1.4(b).[10] Attorney Langkamp also stipulates that by failing to respond to the telephone calls of W.J. or W.J.'s wife and to otherwise keep his client informed about the status of the post-conviction appeal, Attorney Langkamp violated SCR 20:1.4(a).

¶ 33. The amended stipulation states that Attorney Langkamp fully understands the misconduct allegations and the ramifications should the court impose the stipulated level of discipline; fully understands his right to contest the matter; fully understands his right to consult with counsel; and that his entry into the amended stipulation represents his admission of all misconduct and his assent to the level and type of discipline sought by the OLR director, a 60–day suspension. The stipulation requests that this court consider the disciplinary complaint and amended stipulation without the appointment of a referee, approve the amended stipulation, and issue an order consistent therewith.

¶ 34. On June 16, 2009, this court issued an order directing the parties to show cause why a suspension longer than 60 days should not be imposed on Attorney Langkamp. In response to the order to show cause, the OLR stated that its decision to seek a 60–day suspension was based on the ABA Standards for Imposing

and shall consult with the client as to the means by which they are to be pursued. A lawyer shall inform a client of all offers of settlement and abide by a client's decision whether to accept an offer of settlement of a matter. In a criminal case or any proceeding that could result in deprivation of liberty, the lawyer shall abide by the client's decision, after consultation with the lawyer, as to a plea to be entered, whether to waive jury trial and whether the client will testify.

[10] SCR 20:1.4(b) states "[a] lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."

Lawyer Sanctions, as well as Wisconsin precedent substantially similar to the misconduct at issue here, including *In re Disciplinary Proceedings Against Artery*, 2006 WI 11, 288 Wis. 2d 339, 709 N.W.2d 54, *In re Disciplinary Proceedings Against Schrinsky*, 162 Wis. 2d 173, 469 N.W.2d 406 (1991), and *In re Disciplinary Proceedings Against Norlin*, 104 Wis. 2d 117, 310 N.W.2d 789 (1981). The OLR also informed the court that it took into consideration the fact that Attorney Langkamp has no prior disciplinary history.

¶ 35. In response to the order to show cause, Attorney Langkamp submitted an affidavit explaining that he has not practiced law in Wisconsin since 2007. At the time he made the decision to stop practicing law and moved to New York to join a program where professionals teach inner-city students, Attorney Langkamp still had a few cases pending and expected to finish those when he returned to Wisconsin from his summer training in New York. The affidavit states that training for the New York program was much more intense than he had anticipated, and as a result, he did not complete the work on a few of the cases as he had expected. The affidavit also states Attorney Langkamp did not comply with the OLR's request for information in a timely manner because he did not have the time to do so, and also because he knew he would no longer be practicing law. Attorney Langkamp states he remains committed to serving special education students in New York's inner city and does not intend at this time to practice law in Wisconsin or in any other jurisdiction.

¶ 36. After our independent review of the matter, we conclude that the parties' amended stipulation should be accepted. After considering the seriousness of the misconduct and the various mitigating factors presented in this case, we conclude that a 60–day suspension of Attorney Langkamp's license is appropriate.

¶ 37. IT IS ORDERED that the license of Jay M. Langkamp to practice law in Wisconsin is suspended for a period of 60 days, effective the date of this order.

¶ 38. IT IS FURTHER ORDERED that, to the extent he has not already done so, Jay M. Langkamp shall comply with the requirements of SCR 22.26 pertaining to activities following suspension.