IN the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
William R. LAMB, Attorney at Law:

OFFICE OF LAWYER REGULATION, Complainant,

v.

William R. LAMB, Respondent.

Supreme Court

*No. 2011AP49–D.—Decided December 16, 2011.*

2011 WI 101

(Also reported in 806 N.W.2d 439.)

1

¶ 1. PER CURIAM. We review the stipulation filed by the Office of Lawyer Regulation (OLR) and Attorney William R. Lamb regarding Attorney Lamb's professional misconduct in the handling of four client matters. The OLR and Attorney Lamb stipulate that Attorney Lamb committed professional misconduct in his handling of four client matters, and that Attorney Lamb's license to practice law in Wisconsin should be suspended for 60 days for his misconduct. In addition, the parties stipulate that Attorney Lamb shall pay restitution to one client, that he should be required to participate in continuing legal education (CLE) relating to trust account requirements and the ethical obligations of attorneys, and that he be required to pay the full costs of this proceeding, which are $2,261.99 as of August 3, 2011. After careful consideration, we adopt the stipulated facts and discipline recommended by the referee.

¶ 2. Attorney Lamb was admitted to practice law in Wisconsin in 1989. He is a sole practitioner practicing in Menomonie, Wisconsin. In 1997 Attorney Lamb received a consensual private reprimand for failing to

cooperate with the Board of Attorneys Professional Responsibility's investigation into his misconduct and failing to appear at investigative interviews. In 2003 he received a consensual private reprimand for mishandling fees and failing to return a case file to successor counsel.

¶ 3. On January 10, 2011, the OLR filed a complaint alleging Attorney Lamb engaged in 21 counts of misconduct with respect to four separate client matters. The first client matter detailed in the complaint involved Attorney Lamb's representation of D.N. D.N. was granted guardianship of her four step-great-grandchildren in January of 2006. In the summer of 2006 the mother of some of the children filed motions in circuit court to terminate D.N.'s guardianship and obtain custody of the children. D.N. hired Attorney Lamb to represent her in the guardianship matters. He had previously represented her in other matters. Attorney Lamb's representation of D.N. continued until July 2008.

¶ 4. The OLR's complaint alleged that D.N. sent Attorney Lamb numerous e-mails posing various questions about the case. Attorney Lamb failed to respond to the vast majority of D.N.'s e-mails.

¶ 5. In February of 2008 D.N. paid Attorney Lamb $1,000 in cash. Attorney Lamb did not enter into a written fee agreement with D.N., nor did he place the $1,000 in his trust account. A week later D.N. borrowed money and paid Attorney Lamb $2,500. Attorney Lamb did not put the $2,500 into his trust account, nor did he enter into a written fee agreement with D.N.

¶ 6. On May 27, 2008, Attorney Lamb's license to practice law in Wisconsin was suspended for failure to comply with CLE requirements. A telephone conference in D.N.'s case was held in early June 2008. Attorney Lamb did not participate in the telephone conference. He also did not advise the court or D.N. that he

would be unable to participate in the phone conference because his law license was still suspended. D.N. believed that Attorney Lamb had participated in the telephone conference. Attorney Lamb's license was reinstated on June 24, 2008.

¶ 7. Between June 24 and July 3, 2008, D.N. made a number of visits to Attorney Lamb's office. No one answered when she knocked on the door. Attorney Lamb's vehicle was in the parking lot during those attempted visits, and the children who accompanied D.N. to Attorney Lamb's office looked under the door and could see someone was in the office. On another occasion, D.N. was waiting in her vehicle in the parking lot outside Attorney Lamb's office when she saw Attorney Lamb pull in behind her and observed in her rearview mirror that he was making a cell phone call. The cell phone call came to her and Attorney Lamb reported he would be unable to make the meeting because he was "tied up in court." On yet another occasion, Attorney Lamb gave notice of cancelling an appointment with D.N. by leaving a note on his office door that was visible to passersby in a common hallway.

¶ 8. D.N. hired a new attorney on July 10, 2008. The following day D.N. e-mailed Attorney Lamb and raised the issue of obtaining a $2,800 refund from the $3,500 she had paid him. D.N. informed Attorney Lamb of the name of her new attorney and asked for a copy of everything in Attorney Lamb's file to give to the new attorney. Attorney Lamb did not provide a copy of his file to D.N. D.N. sent numerous additional e-mails asking for a $2,800 refund. Attorney Lamb never provided an accounting of the fees he claimed to have earned, nor did he return any of the advance fee paid by D.N.

¶ 9. On December 1, 2008, D.N. contacted the OLR to file a grievance against Attorney Lamb. In January 2009 the OLR sent Attorney Lamb notice of its

formal investigation and requested a complete response to D.N.'s grievance. In May 2009 Attorney Lamb provided the OLR with his formal response to the grievance. The OLR assigned the matter to its District 8 committee to conduct a thorough investigation. The lead investigator attempted to contact Attorney Lamb and left a number of voicemails asking to meet with Attorney Lamb to discuss D.N.'s grievance as well as another grievance filed by K.D. Attorney Lamb left a voicemail message for the lead investigator saying he was out of the office and giving a date on which the investigator was to call him. When the investigator's office staff attempted to contact Attorney Lamb and again left a voicemail message at Attorney Lamb's office phone, Attorney Lamb failed to respond. The lead investigator then sent Attorney Lamb a letter by certified mail and regular first-class mail concerning D.N.'s grievance. Attorney Lamb received the letter but failed to respond. Attorney Lamb failed to attend an investigative meeting that was scheduled by the lead investigator, and he never provided his file in the D.N. grievance matter to the investigator.

¶ 10. The OLR alleged eight counts of misconduct with respect to Attorney Lamb's representation of D.N.:

> Count 1: By failing to reasonably consult with his client, [D.N.], regarding the means by which he intended to protect a guardianship, file a defamation action, seek to terminate parental rights, and establish visitation in connection with an adverse party's legal challenges, [Attorney] Lamb failed to reasonably consult with his client about the means by which the client's objectives are to be accomplished in violation of SCR 20:1.4(a)(2).[1]

---

[1] SCR 20:1.4(a)(2) provides that a lawyer shall "reasonably consult with the client about the means by which the client's objectives are to be accomplished; . . . ."

Count 2: By failing on multiple occasions to inform [D.N.] regarding the status of critical events during the guardianship/visitation proceedings, such as the status of his efforts to file a CHIPS petition, the status of the hearing to terminate guardianship, the status of contempt motions filed against [D.N.] for failing to provide visitation (and any required responses to the motions), the status of subsequent negotiations regarding visitation and an anticipated hearing to set visitation, and the fact that his license to practice law had been suspended and he would be unable to attend the visitation hearing on [D.N.'s] behalf, [Attorney] Lamb failed to keep his client reasonably informed about the status of the matter in violation of former SCR 20:1.4(a)[2] and current SCR 20:1.4(a)(3).[3]

Count 3: By failing to respond to [D.N.'s] multiple e-mails, telephone calls, and attempted office visits seeking information and guidance regarding the guardianship/visitation proceedings, and, in addition, in failing to respond to multiple requests to clarify provisions of the Court's Order entered following the January, 2007 adversary hearing regarding the payment of Guardian ad Litem fees, [Attorney] Lamb failed to promptly comply with reasonable requests by his client for information in violation of former SCR 20:1.4(a) [effective through June 30, 2007] and current SCR 20:1.4(a)(4).[4]

Count 4: By failing to reasonably consult with [D.N.] regarding his plan to file a CHIPS petition as

[2] Former SCR 20:1.4(a) (effective through June 30, 2007) stated: "A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information."

[3] SCR 20:1.4(a)(3) states a lawyer shall "keep the client reasonably informed about the status of the matter; . . . ."

[4] SCR 20:1.4(a)(4) states a lawyer shall "promptly comply with reasonable requests by the client for information; . . . ."

well as defend against an adversary action seeking to terminate [D.N.'s] guardianship, including his plans for preparing [D.N.] and potential witnesses for a January 16, 2007 hearing, and, in addition, in failing to explain to [D.N.] the legal significance of the adversary guardianship proceedings, and, furthermore, by failing to explain to [D.N.] the legal significance of critical events in the visitation proceedings, such as the motions for contempt filed by the adversary parent and the Court's June, 2008 order regarding visitation, as well as the impact of his suspension from the practice of law on the ongoing matters, [Attorney] Lamb failed to explain matters to the extent reasonably necessary to permit his client to make informed decisions regarding the representation in violation of SCR 20:1.4(b).[5]

Count 5: By accepting a fee in the amount of $3,500 without a written fee agreement, [Attorney] Lamb failed to communicate in writing the purpose and effect of any retainer or advance fee paid to him in violation of SCR 20:1.5(b)(2).[6]

Count 6: By accepting $3,500 in advance fee payments from [D.N.] and failing to hold the advances in trust, without complying with the notice, accounting, and arbitration requirements of SCR 20:1.15(b)(4m), [Attorney] Lamb failed to hold in trust unearned fees and advance payments of fees in violation of SCR 20:1.15(b)(4).[7]

---

[5] SCR 20:1.4(b) provides as follows: "A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."

[6] SCR 20:1.5(b)(2) states: "If the total cost of representation to the client, including attorney's fees, is more than $1000, the purpose and effect of any retainer or advance fee that is paid to the lawyer shall be communicated in writing."

[7] SCR 20:1.15(b)(4) provides:

8

Count 7: By failing to surrender papers and property to which [D.N.] was entitled and by failing to either account for or refund advanced payments that had not been earned or incurred, [Attorney] Lamb failed to surrender papers and property to which his client was entitled or refund any advance payment of fee or expense that has not been earned or incurred, in violation of SCR 20:1.16(d).[8]

Count 8: By failing to cooperate [with] OLR's District Committee 8 investigation in the [D.N.] grievance matter, [Attorney] Lamb failed to cooperate with the office of lawyer regulation in the investigation, prosecution, and disposition of grievances in violation of SCR 22.04(1)[9] and SCR 21.15(4),[10]

---

Except as provided in par. (4m), unearned fees and advanced payments of fees shall be held in trust until earned by the lawyer, and withdrawn pursuant to sub. (g). Funds advanced by a client or 3rd party for payment of costs shall be held in trust until the costs are incurred.

[8] SCR 20:1.16(d) states:

Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by other law.

[9] SCR 22.04(1) states:

The director may refer a matter to a district committee for assistance in the investigation. A respondent has the duty to cooperate specified in SCR 21.15(4) and 22.03(2) in respect to the district committee. The committee may subpoena and compel the production of documents specified in SCR 22.03(8) and 22.42.

[10] SCR 21.15(4) provides as follows:

Every attorney shall cooperate with the office of lawyer regulation in the investigation, prosecution and disposition of

as enforced through SCR 20:8.4(h).[11]

¶ 11. The second client matter detailed in the OLR's complaint involved Attorney Lamb's representation of K.D. in a post-divorce proceeding. K.D. retained Attorney Lamb on July 9, 2008, and paid him a $750 retainer with funds her father had loaned to her. A hearing was held on July 14, 2008, before a circuit court commissioner. K.D. appeared in person and Attorney Lamb appeared by telephone. K.D.'s former husband appeared in person and with his attorney. The court commissioner ordered mediation of child placement issues. K.D. thereafter unsuccessfully tried to contact Attorney Lamb by telephone and by going to his office to seek information and guidance about the case. K.D. and Attorney Lamb spoke by telephone once in mid-August 2008. Because of her inability to contact Attorney Lamb and her dissatisfaction with his representation, K.D. retained new counsel in October of 2008.

¶ 12. Both K.D. and her father repeatedly contacted Attorney Lamb asking for an itemization of fees and costs for a potential refund of amounts that had been paid to him. Attorney Lamb never provided the requested itemization.

¶ 13. K.D. filed a grievance against Attorney Lamb with the OLR. In April 2009 an OLR investigator wrote to Attorney Lamb concerning the grievance and told him

grievances, complaints filed with or by the director, and petitions for reinstatement. An attorney's wilful failure to cooperate with the office of lawyer regulation constitutes violation of the rules of professional conduct for attorneys.

[11] SCR 20:8.4(h) states it is professional misconduct for a lawyer to "fail to cooperate in the investigation of a grievance filed with the office of lawyer regulation as required by SCR 21.15(4), SCR 22.001(9)(b), SCR 22.03(2), SCR 22.03(6), or SCR 22.04(1); . . . ."

10

to provide a complete copy of his file for K.D. Attorney Lamb responded but failed to deliver the file to the OLR.

¶ 14. The OLR alleged the following counts of misconduct with respect to Attorney Lamb's representation of K.D.:

Count 9: By failing to keep [K.D.] informed about the status of the child custody issues for which he had been retained, [Attorney] Lamb failed to keep his client reasonably informed about the status of the matter in violation of SCR 20:1.4(a)(3).

Count 10: By failing to respond to [K.D.'s] multiple telephone calls and attempted office visits seeking information and guidance regarding the child custody issues, [Attorney] Lamb failed to promptly comply with reasonable requests by his client for information in violation of former SCR 20:1.4(a) [effective through June 30, 2007] and current SCR 20:1.4(a)(4).

Count 11: By failing to respond to multiple telephone calls and attempted office visits seeking information regarding fees and expenses incurred in the matters, [Attorney] Lamb failed to promptly respond to his client's request for information concerning fees and expenses in violation of SCR 20:1.5(b)(3).[12]

Count 12: By failing to cooperate with OLR's District Committee 8 investigation in the [K.D.] grievance matter, [Attorney] Lamb failed to cooperate with the office of lawyer regulation in the investigation, prosecution, and disposition of grievances in violation of SCR 22.04(1) and SCR 21.15(4), as enforced through SCR 20:8.4(h)

¶ 15. The third client matter detailed in the OLR's complaint involved Attorney Lamb's representation of

[12] SCR 20:1.5(b)(3) states: "A lawyer shall promptly respond to a client's request for information concerning fees and expenses."

11

C.H. regarding a speeding ticket and operating while intoxicated (OWI) ticket issued in Eau Claire County. C.H. lived in Illinois. Attorney Lamb offered C.H. two representation options: a flat fee of $2,000 or an advance payment of $1,000 to be billed at $250 per hour. C.H. said he accepted the second option and sent Attorney Lamb checks in the amounts of $600 and $400. Attorney Lamb acknowledged receipt of the two checks by e-mail and promised to forward to C.H. copies of a "not guilty appearance and motion." Attorney Lamb never deposited C.H.'s advance fee payments into a trust account.

¶ 16. On February 3, 2009, Attorney Lamb submitted a letter to the court containing not guilty pleas to both charges. On February 11, 2009, C.H. e-mailed Attorney Lamb and noted he had not yet received any of the promised paperwork. As part of a plea agreement negotiated by Attorney Lamb, C.H. entered a plea of no contest to the speeding charge and agreed to pay a forfeiture in return for which the prosecutor agreed to dismiss the OWI charge. The plea hearing took place on February 27, 2009. Despite requests, C.H. never received any paperwork or an itemized statement from Attorney Lamb. Except for one phone call in March of 2009, Attorney Lamb failed to return any of C.H.'s phone calls.

¶ 17. After almost a year of failed attempts to reach Attorney Lamb to discuss the matter, C.H. filed a grievance with the OLR. An OLR investigator sent Attorney Lamb a notice of the investigation and requested his response to C.H.'s grievance. Attorney Lamb failed to respond. Attorney Lamb also failed to respond to a second letter that OLR sent by both certified and first-class mail. The Dunn County Sheriff's Department personally served Attorney Lamb with another letter from the OLR. Attorney Lamb

finally responded to the OLR, but never provided a copy of his file in the C.H. matter and never provided a copy of a letter Attorney Lamb allegedly sent to C.H. regarding the fee arrangement.

¶ 18. The OLR alleged the following counts of misconduct with respect to Attorney Lamb's representation of C.H.:

Count 13: By accepting a $1,000 advance fee payment from [C.H.] and failing to hold the advance in trust, (with no evidence that he intended to utilize the alternative fee placement permitted by SCR [20:1.15(b)(4m)]), [Attorney] Lamb failed to hold in trust unearned fees and advance payments of fees in violation of SCR 20:1.15(b)(4).

Count 14: By failing to respond to [C.H.'s] multiple telephone calls seeking information regarding his fee and a request for an itemized bill, and by failing to forward to [C.H.] copies of documents and pleadings after promising to do so, [Attorney] Lamb failed to promptly comply with reasonable requests by his client for information in violation of SCR 20:1.4(a)(4).

Count 15: By failing to respond to [C.H.'s] repeated attempts to obtain information concerning fees and expenses, and by failing to respond to [C.H.'s] April 15, 2009 email requesting an invoice in the matter, [Attorney] Lamb failed to promptly respond to his client's request for information concerning fees and expenses in violation of SCR 20:1.5(b)(3).

Count 16: By failing to provide relevant information to OLR in a timely fashion during OLR's investigation of the [C.H.] grievance matter, and by failing to answer questions fully or otherwise provide information upon request as part of an [OLR] investigation, [Attorney] Lamb failed to fully and fairly disclose all facts and circumstances pertaining to alleged misconduct and failed to answer questions, furnish documents, and failed to present information deemed rel

13

evant to the investigation in violation of SCR 22.03(2) and SCR 22.03(6),[13] which are enforceable under the Rules of Professional Conduct through SCR 20:8.4(h).

¶ 19. The final client matter detailed in the OLR's complaint involved Attorney Lamb's representation of G.B., who retained Attorney Lamb to represent him in a small claims lawsuit against his neighbors. G.B. paid Attorney Lamb a $700 flat fee. Attorney Lamb sent G.B. a receipt for the payment but there was no written fee agreement. G.B. did not hear from Attorney Lamb again. When he called Attorney Lamb in February of 2009 he was informed that Attorney Lamb was busy working on a high profile murder case. Thereafter, G.B. called Attorney Lamb once a week for the next eight months and stopped by Attorney Lamb's law office several times but was unable to reach Attorney Lamb.

¶ 20. G.B. filed a grievance with the OLR. The OLR sent Attorney Lamb a notice of the investigation and requested his response to G.B.'s grievance. Attor-

---

[13] SCRs 22.03(2) and (6) provide:

(2) Upon commencing an investigation, the director shall notify the respondent of the matter being investigated unless in the opinion of the director the investigation of the matter requires otherwise. The respondent shall fully and fairly disclose all facts and circumstances pertaining to the alleged misconduct within 20 days after being served by ordinary mail a request for a written response. The director may allow additional time to respond. Following receipt of the response, the director may conduct further investigation and may compel the respondent to answer questions, furnish documents, and present any information deemed relevant to the investigation.

. . .

(6) In the course of the investigation, the respondent's wilful failure to provide relevant information, to answer questions fully, or to furnish documents and the respondent's misrepresentation in a disclosure are misconduct, regardless of the merits of the matters asserted in the grievance.

ney Lamb did not respond. Attorney Lamb also failed to respond to a second letter the OLR sent by certified mail and regular first-class mail. He also failed to respond to a third letter personally served on him by the Dunn County Sheriff's Department.

¶ 21. On March 30, 2010, the OLR filed a notice of motion and motion with this court seeking an order to show cause why Attorney Lamb's license should not be temporarily suspended for failure to cooperate with an OLR investigation. On April 1, 2010, this court issued an order to show cause in the matter. On April 16, 2010, Attorney Lamb finally submitted a response to G.B.'s grievance. Attorney Lamb's response claimed that he did some preliminary investigation and research, wrote G.B.'s neighbors a letter, obtained underlying police reports, and spoke to the Pepin County District Attorney. Attorney Lamb claimed he spent three to four hours on the matter. Attorney Lamb never filed a small claims action against G.B.'s neighbors, nor did he refund any money to G.B.

¶ 22. The OLR alleged the following counts of misconduct regarding Attorney Lamb's representation of G.B.:

> Count 17: By failing to file a small claims lawsuit on behalf of [G.B.], or otherwise advance [G.B.'s] interests in any meaningful manner, [Attorney] Lamb failed to act with reasonable diligence and promptness in representing a client in violation of SCR 20:1.3.[14]

> Count 18: By failing to keep [G.B.] reasonably informed regarding the status of his client matter, and by failing to respond to [G.B.'s] repeated requests for information regarding the lawsuit, [Attorney] Lamb

---

[14] SCR 20:1.3 states that "[a] lawyer shall act with reasonable diligence and promptness in representing a client."

failed to keep his client reasonably informed about the status of the matter in violation [of] SCR 20:1.4(a)(3) and failed to promptly comply with reasonable requests by his client for information in violation of SCR 20:1.4(a)(4).

Count 19: By failing to provide any meaningful information to [G.B.] regarding his efforts to pursue a small claims lawsuit against [G.B.'s] neighbors over a [16] month time period, [Attorney] Lamb failed to explain matters to the extent reasonably necessary to permit his client to make informed decisions regarding the representation in violation of SCR 20:1.4(b).

Count 20: By accepting and keeping a $700 fee for representation that he did not complete, [Attorney] Lamb collected an unreasonable fee in violation of [] SCR 20:1.5(a).[15]

---

[15] SCR 20:1.5(a) provides as follows:

A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses. The factors to be considered in determining the reasonableness of a fee include the following:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

16

Count 21: By failing to provide relevant information to OLR in a timely fashion during OLR's investigation of the [G.B.] grievance matter, [Attorney] Lamb failed to fully and fairly disclose all facts and circumstances pertaining to alleged misconduct and failed to answer questions, furnish documents, and failed to present information deemed relevant to the investigation in violation of SCR 22.03(2) and SCR 22.03(6), which are enforceable under the Rules of Professional Conduct through SCR 20:8.4(h).

¶ 23. James R. Erickson was appointed referee in the matter. Attorney Lamb did not file an answer to the OLR's complaint. In April 2011, the OLR filed a notice of motion and motion for default judgment. The referee issued a status report tentatively scheduling a hearing for June 30, 2011. No hearing was held. On July 15, 2011, the OLR and Attorney Lamb filed a stipulation whereby Attorney Lamb stipulated to the allegations in the OLR's complaint. The stipulation states the terms were not bargained for or negotiated between the parties, and that Attorney Lamb admits the facts and misconduct alleged by the OLR and agrees to the level of discipline sought by the OLR director. Attorney Lamb represents that he fully understands the ramifications should the court impose the stipulated level of discipline, fully understands his right to contest the matter, fully understands his right to consult with and obtain counsel, and states that his entry into the stipulation is made knowingly and voluntarily.

¶ 24. The stipulation also states that in recommending discipline, the OLR director took into consideration that the grievances against Attorney Lamb demonstrated a pattern of serious misconduct including

(8) whether the fee is fixed or contingent.

17

repeated failure to account for fees properly and an unwillingness to cooperate with the OLR's investigations. The parties stipulated that an appropriate level of discipline to impose in response to Attorney Lamb's misconduct is a 60–day suspension of his license to practice law in Wisconsin. The parties also stipulated that Attorney Lamb should provide restitution to G.B. in the amount of $700.

¶ 25. The stipulation was referred to Referee Erickson. On July 15, 2011, the referee issued a report adopting and incorporating by reference all of the facts relating to the 21 counts of misconduct set forth in the OLR's complaint and the stipulation. The referee concluded that Attorney Lamb violated each supreme court rule as alleged in each of the 21 counts charged in the complaint and as agreed to in the stipulation. The referee recommended that Attorney Lamb's license to practice law in Wisconsin be suspended for no less than 60 days; that Attorney Lamb be ordered to make restitution to G.B. in the amount of $700; that Attorney Lamb be ordered to pay the full costs associated with the proceeding; and that Attorney Lamb be ordered to participate in remedial education, at his own expense, relating to trust account requirements and supreme court rules obligations.

¶ 26. The referee said an argument could be made that a 60–day suspension was less than adequate, considering the number of counts of misconduct and the egregious nature of the violations of supreme court rules. The referee said the question presented was what level of discipline would be effective in protecting the public and in correcting Attorney Lamb's behavior. While the referee said a 60–day suspension was, at first blush, relatively modest, the referee opined that with some adequate re-education, Attorney Lamb had the

18

capacity to become a credit to his profession. The referee expressed concern that a longer suspension "may very well contribute to the demise of Mr. Lamb's realistic ability to practice law and therefore is most likely not necessary."

¶ 27. After reviewing the parties' stipulation and the referee's report and recommendation, on September 29, 2011, this court issued an order directing the parties to show cause why a 60–day suspension was an appropriate level of discipline in light of Attorney Lamb's prior disciplinary history and the discipline imposed in other similar cases, and why orders for restitution were not appropriate for the other former clients mentioned in the OLR's complaint.

¶ 28. The OLR filed a response to the order to show cause on October 14, 2011. With respect to the appropriate level of discipline the OLR notes that this court has frequently followed the concept of progressive discipline, and it notes that Attorney Lamb received two prior private reprimands. The OLR says this is not a reprimand case. It cites a number of cases it views as somewhat analogous in which the attorney received a 60–day suspension. For example, in *In re Disciplinary Proceedings Against Artery,* 2006 WI 11, 288 Wis. 2d 339, 709 N.W.2d 54, the attorney received a 60–day suspension for multiple counts of misconduct involving six criminal defendant clients. In *In re Disciplinary Proceedings Against Smead,* 2010 WI 4, 322 Wis. 2d 100, 777 N.W.2d 644, the attorney received a 60–day suspension for 15 counts of misconduct involving four clients.

¶ 29. The OLR says prior cases in which attorneys received a suspension exceeding 60 days appear to have involved conduct or circumstances more egregious than that at issue in the instant case or involved more

19

extensive prior discipline and deception or misrepresentation either to clients or the OLR or both. It is the OLR's position that a 60–day suspension is an appropriate sanction in this case and that a stronger sanction is not warranted.

¶ 30. With respect to the issue of restitution, the OLR says a $700 restitution award to G.B. is appropriate because the amount is readily ascertainable and it is undisputed that Attorney Lamb did nothing to earn the fee. The OLR says it appears the fees paid to Attorney Lamb by K.D. and C.H. were reasonable so the OLR director is not seeking restitution in those cases. In the D.N. case the OLR says it appears that Attorney Lamb's efforts over a period of approximately two and one-half years were moderately successful, suggesting that he provided a reasonable amount of services to account for at least much of the $3,500 fee. Consequently, the OLR is not seeking restitution in the D.N. matter.

¶ 31. After careful review, and taking into account the OLR's response to the order to show cause, we adopt the stipulated facts and discipline recommended by the referee. We agree with the referee that a 60–day suspension is relatively modest. While the referee expressed concern that a longer suspension would have a detrimental impact on Attorney Lamb's ability to practice law and his livelihood, we do not view this as an appropriate factor in establishing a level of discipline. Any suspension of an attorney's license to practice law is likely to have a detrimental impact on the attorney's livelihood. The sanction imposed in each case should be tailored to the misconduct at issue, should take into account the attorney's prior disciplinary record, and should be generally in accord with the sanction imposed

20

in other somewhat analogous cases. We conclude that a 60–day suspension is consistent with these considerations.

¶ 32. We remind Attorney Lamb that the court may impose progressively severe sanctions when an attorney engages in a pattern of misconduct. We impose the sanction recommended by the referee, incorporating the parties' stipulation, with the expectation that Attorney Lamb will not commit future misconduct subjecting him to additional discipline. We also deem it appropriate to require Attorney Lamb to make restitution to G.B., to require him to participate in CLE relating to trust account requirements and ethical obligations of Wisconsin attorneys, and to require him to pay the full costs of this proceeding.

¶ 33. IT IS ORDERED that the license of William R. Lamb to practice law in Wisconsin is suspended for a period of 60 days, effective January 23, 2012.

¶ 34. IT IS FURTHER ORDERED that William R. Lamb shall comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.

¶ 35. IT IS FURTHER ORDERED that within 180 days of the date of this order, William R. Lamb make restitution to G.B. in the amount of $700.

¶ 36. IT IS FURTHER ORDERED that within 12 months of the date of this order William R. Lamb complete a minimum of 12 hours of continuing legal education credits relating to trust account requirements and ethical obligations of Wisconsin attorneys.

¶ 37. IT IS FURTHER ORDERED that within 60 days of the date of this order, William R. Lamb pay to the Office of Lawyer Regulation the costs of this proceeding. If such costs are not paid within the time

specified, and absent a showing to the court of his inability to pay the costs within that time, the license of William R. Lamb to practice law in Wisconsin shall remain suspended until further order of this court.

¶ 38. ANN WALSH BRADLEY, J. (*concurring in part, dissenting in part*). I would order Attorney Lamb to pay restitution to D.N. in the amount of $2,800.

¶ 39. For the foregoing reason, I concur in part and dissent in part.