# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2018AP237-D |

| | |
|---|---|
| COMPLETE TITLE: | In the Matter of Disciplinary Proceedings Against Jeffery J. Drach, Attorney at Law: |
| | Office of Lawyer Regulation,        Complainant-Respondent-Cross Appellant,     v. Jeffery J. Drach,        Respondent-Appellant- Cross Respondent. |

DISCIPLINARY PROCEEDINGS AGAINST DRACH

| | |
|---|---|
| OPINION FILED: | December 23, 2020 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | October 26, 2020 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | |
|   COUNTY: | |
|   JUDGE: | |

JUSTICES:
Per Curiam.
NOT PARTICIPATING:
ANN WALSH BRADLEY, J., did not participate.

ATTORNEYS:

For the respondent-appellant-cross-respondent, there were briefs filed by *Dean R. Dietrich, Alyson D. Dieckman,* and *Dietrich VanderWaal, S.C.*, Wausau. There was an oral argument by *Dean R. Dietrich*.

For the complainant-respondent-cross-appellant, there were briefs filed by *Brenda K. Sunby, William J. Weigel,* and *Office of Lawyer Regulation*, Madison. There was an oral argument by *William J. Weigel*.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2018AP237-D

STATE OF WISCONSIN                    :        IN SUPREME COURT

**In the Matter of Disciplinary Proceedings Against Jeffery J. Drach, Attorney at Law:**

**Office of Lawyer Regulation,**

> **Complainant-Respondent-
> Cross Appellant,**

> **v.**

**Jeffery J. Drach,**

> **Respondent-Appellant-
> Cross Respondent.**

**FILED**

**DEC 23, 2020**

Sheila T. Reiff
Clerk of Supreme Court

ATTORNEY disciplinary proceeding. *Attorney publicly reprimanded.*

¶1   PER CURIAM.   This disciplinary matter comes to the court on Attorney Jeffery J. Drach's appeal and the Office of Lawyer Regulation's (OLR) cross-appeal of a report and recommendation of Referee Robert E. Kinney.   The referee based his report in part on a stipulation between Attorney Drach and the OLR, in which Attorney Drach admitted four counts of misconduct and agreed to make a $1,540 restitution payment to

one of the two clients involved in this matter. After holding an evidentiary hearing to address the appropriate level of discipline, the referee filed a report concluding that Attorney Drach committed three of the four charged counts of misconduct, and recommending a public reprimand. The referee further recommended that this court order Attorney Drach to pay the full costs of this disciplinary proceeding, which are $26,449.93 as of November 9, 2020, and pay restitution beyond the stipulated amount; specifically, a total of $2,744 to the two clients involved in this matter, plus interest.

¶2 Through his appeal, Attorney Drach challenges the referee's recommended public reprimand; he claims his misconduct merits only a private reprimand. Attorney Drach also asks the court to reduce the amount of costs in this case by 50 percent. Finally, Attorney Drach argues that the restitution award against him should not depart from the stipulated amount: $1,540 to one of the clients involved this matter.

¶3 In its cross-appeal, the OLR argues that the referee erred in recommending the dismissal of one of the four misconduct charges. The OLR further argues that Attorney Drach's misconduct merits a public reprimand and an award of full costs, as the referee recommended. The OLR does not seek restitution beyond the stipulated amount.

¶4 After reviewing this matter and considering Attorney Drach's appeal and the OLR's cross-appeal, we agree, in part, with the referee's recommendations. We accept the referee's factual findings based on the parties' stipulation. We agree

2

with the referee that one of the charged counts of misconduct should be dismissed, but we reach this conclusion for reasons different from those stated by the referee. We agree with the referee that Attorney Drach committed the remaining counts of misconduct, and that this misconduct merits a public reprimand. We hold that Attorney Drach should pay the full costs of this matter, and we impose restitution in the stipulated amount of $1,540.

¶5 The OLR initiated this disciplinary proceeding with the filing of a three-count complaint in February 2018, which it later amended in a four-count complaint in June 2018. Attorney Drach denied any professional misconduct in his answers to both the original and amended complaints.

¶6 The case proceeded through discovery and was set for a disciplinary hearing in April 2019. About two weeks before the scheduled hearing, Attorney Drach entered into a stipulation in which he admitted all four misconduct charges. He also agreed to pay——and in fact later paid——$1,540 in restitution to one of the aggrieved clients.

¶7 The parties requested, and the referee held, an evidentiary hearing regarding the appropriate level of discipline. Attorney Drach appeared as the only witness. In post-hearing briefing, the OLR asked for a public reprimand, and Attorney Drach asked for a private reprimand.

¶8 In August 2019, the referee filed his report. He accepted the parties' stipulation, which set forth the following underlying facts.

¶9 Attorney Drach has practiced law in Wisconsin since 1975. He operates Drach Elder Law Center LLC (hereafter, the "Drach firm") in Wausau, WI.

¶10 Attorney Drach has a disciplinary history. In 2002, he received a public reprimand for failing to consult with a client as to the objectives of representation; failing to keep a client reasonably informed about the status of a matter, to promptly comply with the client's reasonable requests for information, and to explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation; and representing a client when that representation conflicted with his responsibilities to another client. See Public Reprimand of Jeffery J. Drach, No. 2002-9 (electronic copy available at https://compendium.wicourts.gov/app/raw/000962.html). In 2008, Attorney Drach received a private reprimand for failing to adequately supervise the conduct of a non-lawyer employee, which in turn led to conduct by the non-lawyer employee that would have constituted professional incompetence had Attorney Drach engaged in the conduct himself. Private Reprimand No. 2008-26 (electronic copy available at https://compendium.wicourts.gov/app/raw/002152.html).

¶11 The instant case involves Attorney Drach's misconduct in two client matters, described below.

### Mr. and Mrs. P. and their adult son, R.

¶12 The first client matter at issue involved a family comprised of an elderly couple, Mr. and Mrs. P., and their adult

4

son, R. R. had always lived with Mr. and Mrs. P.; he never lived independently. Mr. P.'s health was declining.

¶13 In 2011, Mr. and Mrs. P. entered into three flat fee agreements with the Drach firm:

- a "Life Planning Agreement," for $975, which Mr. and Mrs. P. paid in full in February 2011;

- an "Asset Preservation Planning Agreement," for $5,975, which Mr. and Mrs. P. paid in full in May 2011; and

- an "Implementation of the Asset Preservation Plan Agreement," for $2,275, which Mr. and Mrs. P. paid in full in May 2011.

¶14 In August 2011, the Drach firm sent Mr. and Mrs. P. an itemized bill, labeled "Life Planning," for $975. There were several problems with this bill. First, Mr. and Mrs. P. had already paid a flat fee for "life planning" services (e.g., drafting powers of attorney and living wills). Second, although the bill was labeled as concerning "Life Planning," the actual itemized work on the bill did not concern life planning, but rather related to transferring assets to a trust—an area of work that was not covered by any of the engagement agreements between Attorney Drach and Mr. and Mrs. P. Third, Attorney Drach's and his staff member's hourly rates were not set forth in the bill. Mr. and Mrs. P. nevertheless paid the bill in full.

¶15 In June 2014, the couple's adult son, R., called Attorney Drach's firm with news that Mrs. P. was in rapidly failing health. This development forced revisions to the estate

5

plan that Attorney Drach had prepared for Mr. and Mrs. P., which was based on the assumption that Mr. P. would predecease Mrs. P. Within a few days of R.'s phone call, Attorney Drach's staff went to Mrs. P.'s hospice bed with revised estate planning documents. But Mrs. P. had already lost consciousness, and she died shortly thereafter.

¶16 In the months following Mrs. P.'s death, Attorney Drach worked on asset preservation and trust administration matters on Mr. P.'s behalf. Attorney Drach did not have a written hourly fee agreement with Mr. and Mrs. P. for either category of work. During this time period, the Drach firm issued bills to Mr. P. totaling $6,632.40 for asset preservation work and $4,537.22 for trust administration work.

¶17 In November 2014, R., in his capacity as power of attorney for his father, Mr. P., signed a flat fee agreement for the Drach firm to help prepare a medical assistance application for his father. The Drach firm charged a flat fee of $6,500 plus out-of-pocket costs. The following month, the Drach firm withdrew this amount from client funds held in trust.

¶18 Despite having a flat fee agreement in place for medical assistance application work, the Drach firm sent Mr. P. a bill in March 2015 with medical-assistance-related billing entries for eight dates in November and December 2014. These entries, which totaled $1,540, appeared on a bill related to the Drach firm's asset preservation work.

¶19 On November 12, 2014, the Drach firm obtained R.'s permission by telephone to pay $11,169.62 for services rendered

6

between June 24, 2014 and October 31, 2014. The Drach firm withdrew this amount from client funds held in trust one day later, on November 13, 2014. The Drach firm did not provide the required notice in writing five days in advance of the trust fund withdrawal. Nor did the Drach firm provide a written trust account balance to R. in November 2014, when the legal bill was paid.

¶20 On December 16, 2014, the Drach firm again called R. to obtain permission to pay an additional $11,945 in legal fees from the trust account. The Drach firm explained in a December 18, 2014 letter that this $11,945 amount represented fees for trust administration work, asset preservation work, and the $6,500 flat fee for work on Mr. P.'s medical assistance application. On December 23, 2014, the Drach firm withdrew $11,945 from client funds held in trust. The firm did not provide R. with an accurate accounting in writing of what was being paid from the trust account, nor was he notified when the funds would be withdrawn from trust. Of the fees listed in the December 18, 2014 letter, $2,322 was for asset preservation work that had not yet been done; the firm had estimated the amount of fees needed to finish the asset preservation work by multiplying the expected amount of time the Drach firm's attorneys and staff planned to work on the file by his/her hourly rate. R. was never informed that a portion of the bill was based on estimated future fees.

¶21 As a result of these actions, Attorney Drach stipulated to the following counts of misconduct:

7

**Count One:** By billing medical assistance application work as hourly charges within asset preservation billings when there was an existing flat fee agreement, Attorney Drach violated SCR 20:1.5(a).[1]

**Count Two:** By charging an additional $975 for life planning work when the work was actually for the transferring of assets without disclosing to Mr. and Mrs. P. the basis or rate of the hourly fees, by failing to enter into a written fee agreement for asset preservation work in 2014, and by failing to enter into a written fee agreement for representation relating to trust administration, in each instance, Attorney Drach violated SCR 20:1.5(b)(l).[2]

---

[1] SCR 20:1.5(a) provides:

A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses. The factors to be considered in determining the reasonableness of a fee include the following:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.

[2] SCR 20:1.5(b)(l) provides:

8

**Count Three**: By failing to provide R. with the anticipated date of withdrawal of funds from trust to pay fees in November and December 2014, by failing to provide a written trust account balance in November 2014, by failing to provide an accurate written trust account balance in December 2014, and by estimating future non-contingent fees and withdrawing them from the trust account before they were earned in December 2014, in each instance, Attorney Drach violated former SCR 20:1.15(g).[3]

---

The scope of the representation and the basis or rate of the fee and expenses for which the client will be responsible shall be communicated to the client in writing, before or within a reasonable time after commencing the representation, except when the lawyer will charge a regularly represented client on the same basis or rate as in the past. If it is reasonably foreseeable that the total cost of representation to the client, including attorney's fees, will be $1000 or less, the communication may be oral or in writing. Any changes in the basis or rate of the fee or expenses shall also be communicated in writing to the client.

[3] Former SCR 20:1.15(g), effective through June 30, 2016, provided:

(1) Notice to client. At least 5 business days before the date on which a disbursement is made from a trust account for the purpose of paying fees, with the exception of contingent fees or fees paid pursuant to court order, the lawyer shall transmit to the client in writing all of the following:

a. An itemized bill or other accounting showing the services rendered;

b. Notice of the amount owed and the anticipated date of the withdrawal; and

c. A statement of the balance of the client's funds in the lawyer trust account after the withdrawal.

9

**G.L.**

¶22 The second client matter at issue involved Attorney Drach's representation of G.L. G.L. was an elderly woman with two adult daughters, J.T. and J.E., and a husband with Alzheimer's disease. G.L.'s daughter, J.T., worked at the Drach firm for two years, from January 2007 to February 2009, doing typing and bookkeeping work.

¶23 In 2007, G.L. signed a flat fee agreement with the Drach firm for Estate Planning/Life Planning, Asset Preservation Planning, and Implementation of the Asset Preservation Plan. The flat fee was $12,000, plus out-of-pocket costs. Attorney Drach completed the work encompassed in the flat fee agreement in 2010.

¶24 In November 2014, G.L.'s daughter, J.T., became gravely ill. J.T. was G.L.'s power of attorney. In that capacity, J.T. requested that Attorney Drach review G.L.'s existing documents to ensure that G.L.'s affairs were in order.

¶25 Attorney Drach met with J.T. at her home on November 10, 2014. He did not have J.T. sign any agreement setting forth the nature of the legal work that he was going to perform, nor did he discuss with her whether the legal work would be done on a flat fee or hourly basis. J.T. passed away several days after Attorney Drach met with her.

¶26 In February 2015, Attorney Drach sent G.L. a bill for additional estate planning work in the amount of $7,659. He issued this bill without a written hourly fee agreement in place. The bill did not itemize the time spent by each attorney

10

or staff member or show the hourly rates for Attorney Drach or his staff. Attorney Drach had never discussed with J.T. or G.L. the fact that his and his staff's hourly rates had increased since he had last done trust administration work on G.L.'s behalf several years earlier.

¶27 In late 2014, G.L. retained a different lawyer to represent her with respect to her estate planning and trust administration matters. On March 30, 2015, Attorney Drach provided G.L.'s new counsel with G.L.'s $7,659 bill, which, again, did not include an hourly rate breakdown nor a detailed itemization of the time spent by each attorney or staff member. On April 24, 2015, pursuant to a request by G.L.'s new counsel, Attorney Drach provided counsel with a detailed billing statement that included an itemization of work done on the file and disclosed the current hourly rates for Attorney Drach and his staff.

¶28 As a result of these actions, Attorney Drach stipulated to the following counts of misconduct:

> **Count Four:** By doing legal work on G.L.'s file in 2014 and 2015 for estate planning without a written fee agreement and by failing to communicate in writing any changes to the basis or rate of the hourly fees related to the trust administration legal work, in each instance, Attorney Drach violated SCR 20:1.5(b)(1).

¶29 As mentioned above, the referee filed his report after holding a hearing on sanctions. Despite the parties' stipulation to all four counts of misconduct, the referee recommended dismissal of stipulated Count One, which, again,

11

alleged that by billing Mr. and Mrs. P. for medical assistance application work as hourly charges within asset preservation billings when there was an existing flat fee agreement for medical assistance application work, Attorney Drach violated SCR 20:1.5(a) (forbidding lawyer from making an agreement for, charging, or collecting "an unreasonable fee or an unreasonable amount for expenses"). The referee reasoned that, although Attorney Drach billed in excess of the amount set by the flat fee agreement for medical assistance application work ($6,500), there was no testimony or other evidence in the record to show that the total amount actually billed (the $6,500 flat fee, plus $1,540 in hourly billings, equaling $8,040) was an unreasonable amount. Thus, in the referee's view, there was no violation of SCR 20:1.5(a). "[F]or a violation of SCR 20:1.5(a) to lie, it must be shown that the attorney fees charges were too high," the referee wrote. Without such a showing, Attorney Drach's billing practices could only be a breach of the fee agreement, not misconduct.

¶30 As to the remaining counts, the referee determined that the stipulated facts supported legal conclusions that Attorney Drach had engaged in the misconduct alleged in Counts Two, Three, and Four.

¶31 Turning to the issue of appropriate discipline, the referee found that Attorney Drach's overall course of conduct featured more aggravating factors than mitigating factors. On the aggravating side, the referee noted that Attorney Drach's prior disciplinary cases, from 2002 and 2008, are somewhat

12

remote from today, but much less remote from the time the offenses at issue here were committed. Attorney Drach committed multiple offenses. The victims were particularly vulnerable. Attorney Drach had trouble seeing, or acknowledging, that what he did was wrong, and he tended to blame his employees for his ethical troubles. His substantial experience in the law (more than 40 years) should have counseled against his actions, particularly his tendency to forego written engagement agreements. On the mitigating side, he cooperated with the OLR. He also agreed to pay $1,540 in restitution to the P. family.

¶32 The referee further recommended that Attorney Drach should pay full costs, as well as restitution beyond the stipulated amount. Specifically, the referee recommended a restitution award of $2,744, comprised of the stipulated $1,540 to R., plus a payment to G.L. of $1,204, which equals the difference between the amount Attorney Drach actually billed her at his undisclosed higher rates and the amount he would have billed her at the lower rates at which he had billed her years earlier. The referee further recommended that Attorney Drach pay interest on these restitution amounts.

¶33 As mentioned above, both Attorney Drach and the OLR have appealed from the referee's report. We turn first to the arguments in Attorney Drach's appeal.

¶34 Attorney Drach argues that the referee correctly recommended the dismissal of Count One, which, again, alleged that by billing Mr. and Mrs. P. for medical assistance application work as hourly charges within asset preservation

13

billings when there was an existing flat fee agreement for medical assistance application work, Attorney Drach violated SCR 20:1.5(a). Although Attorney Drach stipulated to the misconduct alleged in Count One, he insists on appeal that the facts underlying this count show no more than clerical errors, and that in any event, there is no evidence to show that the cumulative amount he charged for his services was unreasonable.

¶35 Attorney Drach does not challenge the referee's determinations of misconduct on Counts Two, Three, and Four, but he insists his misconduct should result in the imposition of a private reprimand——not a public reprimand, as the referee recommended. He argues that that his misconduct amounted to nothing more than "technical" violations of our ethical rules, complained about by "disgruntled family members." He claims that his failures to enter into fee agreements with Mr. and Mrs. P. and with G.L. were acts of "care and compassion" because it would have been inappropriate to have conversations about fees with R. while his mother was dying, or with G.L.'s power of attorney, J.T., while J.T. was gravely ill. Attorney Drach also claims that that the referee failed to appropriately acknowledge certain mitigating factors, namely: (1) his cooperation with the OLR; (2) the visible place he holds in the legal community; and (3) the purported fact that, if he is publicly reprimanded, he may be forced to resign certain professional designations or positions. As for his previous disciplinary problems, he claims they are too old, and too distinguishable, to have relevance here.

14

¶36 Turning to restitution and costs, Attorney Drach argues that the referee erred in recommending restitution payments that the OLR never sought. Attorney Drach also objects to the imposition of full costs. He suggests that a reduction in costs——50 percent, his counsel proposed at oral argument—— would be appropriate. He claims that "at the time that OLR initiated its investigation, it alleged that Attorney Drach had engaged in far more serious and pervasive misconduct that what was ultimately alleged." According to Attorney Drach, this extensive investigation, combined with the lengthy litigation involved in this case, show that the OLR "has pursued an unjustified campaign against [him]. In the interest of fairness, the Court should adjust the costs to reflect a more realistic prosecution of the case."

¶37 In its appellate briefing, the OLR argues that the referee's recommendation of a public reprimand is appropriate and supported by the evidence. As an initial matter, the OLR disagrees with the referee's recommendation that this court should dismiss Count One. It submits that the referee's belief that the existence of an SCR 20:1.5(a) violation depends on the reasonableness of the amount ultimately charged the client is inconsistent with the language of the rule. The rule provides that the amount of fees involved is simply one of the eight factors set forth in the rule. See SCR 20:1.5(a)(4). There is no language in the rule that states that the entire fee must be found to be unreasonable in order to make a finding of an SCR 20:1.5(a) rule violation.

15

¶38 The OLR also argues that Attorney Drach's insistence that it would have been improper to discuss fees with his clients at or near the time of a family member's serious illness or death displays a disregard of the ethical rule requiring written fee agreements. The OLR points out that many lawyers regularly deal with families in crisis, especially in personal injury, wrongful death, and probate-type cases, and yet a written communication about what a lawyer is going to charge a client in this situation is mandated by the ethical rules. The OLR further notes that in situations where raising the topic of fees may come across as insensitive, the rules allow some flexibility, as the communication in writing can be "before or within a reasonable time after commencing the representation." SCR 20:1.5(b)(1).

¶39 The OLR also argues that Attorney Drach's previous disciplinary matters are pertinent here. His 2008 private reprimand, for example, was based on his general failure to supervise his office staff in the execution of estate planning documents. The instant case reveals a similar pattern of misconduct; i.e., a failure to put protocols in place to ensure that matters are being properly handled within his office.

¶40 Turning to the issue of restitution and costs, the OLR does not seek restitution beyond the stipulated amount of $1,540. The OLR insists, however, that costs should not be reduced. The OLR reports that while it is true that it investigated matters and charges that were ultimately not pursued in the disciplinary complaint, it did not include any

16

costs attributable to time spent by investigators in the costs reported in this case. Moreover, the OLR notes, Attorney Drach stipulated to all four of the misconduct counts alleged by the OLR. Attorney Drach failed to explain how or why the OLR acted inappropriately in pursing this matter.

¶41 The matter is now before this court to review the referee's report and recommendation, informed by the parties' arguments made in their briefs and at oral argument. When reviewing a referee's report and recommendation, we affirm the referee's findings of fact unless they are clearly erroneous, but we review the referee's conclusions of law on a de novo basis. In re Disciplinary Proceedings Against Inglimo, 2007 WI 126, ¶5, 305 Wis. 2d 71, 740 N.W.2d 125. We determine the appropriate level of discipline to impose given the particular facts of each case, independent of the referee's recommendation, but benefiting from it. In re Disciplinary Proceedings Against Widule, 2003 WI 34, ¶44, 261 Wis. 2d 45, 660 N.W.2d 686.

¶42 Guided by these standards, we conclude that Attorney Drach committed the rule violations alleged by the OLR in Counts Two, Three, and Four——just as the OLR complaint alleged, the parties stipulated, and the referee determined. By his undisputed failure to enter into written fee agreements with his clients, his failure to communicate to G.L. in writing the changes to his firm's hourly rates, and his failure to provide Mr. and Mrs. P.'s adult son, R., with timely notices of the withdrawal of funds from trust and an accurate accounting of

17

trust fund balances, Attorney Drach violated SCR 20:1.5(b)(1) and SCR 20:1.15(g).

¶43 We agree with the referee that Attorney Drach did not commit the misconduct alleged in Count One, but for different reasons from those expressed by the referee. We disagree with the referee's conclusion that it is ethically permissible for a lawyer who has agreed to a flat fee to demand that the client make payments beyond that amount for legal work within the scope of the agreement, so long as the total amount billed is not shown to be excessively high. Clients enter flat fee agreements with the expectation that the flat fee is a reasonable calculation of all of the work to be done. We decline to hold that SCR 20:1.5(a), which mandates reasonable fees, permits a lawyer to unilaterally switch from a flat fee agreement to a flat-fee-plus-hourly-fee arrangement for work covered by the flat fee agreement. Billing a client using such an unagreed-to and inherently contradictory fee structure hardly seems "reasonable" for purposes of SCR 20:1.5(a), regardless of the total amount billed.

¶44 We are persuaded, however, by Attorney Drach's argument that he did not engage in this kind of inappropriate billing practice here. Rather, it appears undisputed that Attorney Drach's clerical staff mistakenly entered, on a single bill in an hourly billing matter, time entries for eight dates concerning work that should have been billed as part of a flat fee billing agreement. When asked at the sanctions hearing in

18

this matter why he did not correct these errors while reviewing the bill, Attorney Drach testified:

> [W]hat I usually review for is typos and grammar. I review for appropriate descriptions in the narrative. This was done at a time when we were scrambling to make sure that [Mr. P.] got eligible [for Medicaid]. So I think I reviewed this, but . . . I obviously didn't pick up on the fact that there were some medical assistance entries there.

Attorney Drach agreed to reimburse the P. family for the amounts billed in the mistaken time entries (a total of $1,540), and he has, in fact, done so.

¶45 On these particular facts, we do not find an SCR 20:1.5(a) violation. While an attorney's fee must unquestionably be reasonable, we decline to hold that the issuance of a single bill containing some inadvertently included time entries rises to the level of misconduct contemplated by SCR 20:1.5(a).

¶46 We are left, then, with determining the appropriate sanction for the misconduct alleged in Counts Two, Three, and Four. In making this determination, we reject Attorney Drach's insistence that this court should view his failure to enter written fee agreements with his clients as an act of compassion, not misconduct. As explained above, Attorney Drach argues that he was loathe to discuss fee arrangements with his clients in times of illness or recent family loss. That is not a winning excuse for a lawyer's failure to get written fee agreements in place——especially for an elder law lawyer such as Attorney Drach. Illness, death, and the family turmoil associated with

19

these events are integral parts of Attorney Drach's practice. They do not give him an excuse to bypass explicit ethical requirements. To the contrary, the distressing circumstances in which his clients often find themselves make it only more important that Attorney Drach have clear, written fee agreements in place——as did not happen here.

¶47 We note, too, that this is the third time that Attorney Drach has been the subject of a disciplinary action. Given that he has already been privately and publicly reprimanded, one could argue that the next logical step is a suspension. See In re Disciplinary Proceedings Against Gorokhovsky, 2013 WI 100, ¶26, 351 Wis. 2d 408, 840 N.W.2d 126 ("Now that we already have privately and publicly reprimanded Attorney Gorokhovsky, imposing yet another reprimand would unduly depreciate the seriousness of his misconduct and the need to deter him from continued unprofessional behavior.") But a suspension seems too harsh; while Attorney Drach has engaged in unprofessional billing practices, there is no evidence of deceit or any course of conduct designed to collect fees for work not performed.

¶48 A public reprimand, however, fits comfortably within our case law. See, e.g., Public Reprimand of James T. Runyon, No. 2017-5 (electronic copy available at https://compendium.wicourts.gov/app/raw/002958.html) (imposing public reprimand on previously disciplined lawyer for, among other things, failing to provide a client with a written communication explaining the representation's scope or required

20

fee information, failing to notify the client before removing fees from his trust account, failing to communicate his fee in writing, and withdrawing an advanced fee before it was earned); see also Public Reprimand of Jerry T. Delcore, No. 2017-2 (electronic copy available at https://compendium.wicourts.gov/app/raw/002929.html) (imposing public reprimand on previously disciplined lawyer for providing a client with inconsistent and confusing information regarding the rate and basis of her fees, and for failing to provide the client with notices and accountings required under former SCR 20:1.15(b)(4m)(a) and (b) for advanced fee payments).

¶49 Although Attorney Drach claims that a public reprimand will hurt his standing in the elder law community, we have previously made clear that a possible detrimental impact on an attorney's ability to practice is not an appropriate factor in establishing a level of discipline. See In re Disciplinary Proceedings Against Lamb, 2011 WI 101, ¶31, 338 Wis. 2d 1, 806 N.W.2d 439.

¶50 Finally, the court must consider the issues of restitution and costs. At oral argument, the OLR made clear that it does not now, and did not previously, seek restitution beyond the amount that Attorney Drach has already paid ($1,540). We accede to the OLR's judgment on this issue.

¶51 As to costs, we reject Attorney Drach's request for a 50 percent reduction in awardable costs as undeveloped. In proceedings before the referee, Attorney Drach objected to the OLR's requested costs in a conclusory fashion, and did not state

21

what he considered to be a reasonable amount of costs. See SCR 22.24(2).[4] His request for a 50 percent reduction came only at oral argument, unsupported by any explanation as to why this figure is reasonable beyond a claim that the OLR engaged in overbroad litigation against him——a perplexing argument given his stipulation to all of the counts that the OLR charged. Under SCR 22.24(1m), the court's general policy is that upon a

---

[4] SCR 22.24(2) provides:

> In seeking the assessment of costs by the supreme court, the director shall file in the court, with a copy to the referee and the respondent, a statement of costs within 20 days after the filing of the referee's report or a SCR 22.12 or 22.34(10) stipulation, together with a recommendation regarding the costs to be assessed against the respondent. If an appeal of the referee's report is filed or the supreme court orders briefs to be filed in response to the referee's report, a supplemental statement of costs and recommendation regarding the assessment of costs shall be filed within 20 days of the date of oral argument or, if no oral argument is held, the filing date of the last brief on appeal. The recommendation should explain why the particular amount of costs is being sought. The respondent may file an objection to the statement of costs and recommendation within 21 days after service of the statement of costs. A respondent who objects to a statement of costs must explain, with specificity, the reasons for the objection and must state what he or she considers to be a reasonable amount of costs. The objection may include relevant supporting documentation. The office of lawyer regulation may reply within 11 days of receiving the objection. In proceeding before a referee the referee shall make a recommendation to the court regarding costs. The referee should explain the recommendation addressing the factors set forth in SCR 22.24 (1m). The referee shall consider the submissions of the parties and the record in the proceeding. No further discovery or hearing is authorized.

finding of misconduct it is appropriate to impose all costs upon the respondent. The court may, in the exercise of its discretion, reduce the amount of costs, but we find no justification in this case for a deviation from the court's general policy.

¶52 IT IS ORDERED that Jeffery J. Drach is publicly reprimanded for his professional misconduct.

¶53 IT IS FURTHER ORDERED that within 60 days of the date of this order, Jeffery J. Drach shall pay to the Office of Lawyer Regulation the costs of this proceeding, which are $26,449.93 as of November 9, 2020.

¶54 IT IS FURTHER ORDERED that the director of the Office of Lawyer Regulation shall advise the court if there has not been full compliance with all conditions of this decision.

¶55 ANN WALSH BRADLEY, J., did not participate.